**Reversed, Rendered in Part, Remanded in Part, and Memorandum Opinion filed October 17, 2017.**



In the

# Fourteenth Court of Appeals

### NO. 14-16-01026-CV

## HUMBLE SURGICAL HOSPITAL, LLC, and K & S CONSULTING, LLC D/B/A K+S CONSULTING, Appellants

**v.**

## SHANNON DAVIS, Appellee

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2015-75193**

## O P I N I O N

In this medical negligence case, Humble Surgical Hospital, LLC, and K & S Consulting, LLC d/b/a K+S Consulting (collectively, the "Hospital Parties"), challenge the trial court's denial of the Hospital Parties' second motion to dismiss Shannon Davis's lawsuit for failure to comply with section 74.351 of the Texas Civil Practice and Remedies Code. The Hospital Parties contend that the trial court abused its discretion by concluding that Davis's expert reports complied with section 74.351. Because the expert reports fail to satisfy the statutory requirements as to causation, we

reverse the trial court's order denying the Hospital Parties motion to dismiss and render judgment dismissing Davis's claims against the Hospital Parties with prejudice. We remand for a determination of reasonable attorney's fees and costs.

## I.    BACKGROUND

On December 12, 2013, Davis had surgery to correct foot deformities at Humble Surgical Center. Podiatrist Dr. Jason Armstrong performed the surgery with the help of Dr. Michael Gordon and Dr. Walter Young. The eight-hour surgery involved multiple procedures. After surgery, Armstrong ordered that Davis be kept for 23-hour observation due to the length of the surgery.

During observation, Davis experienced tingling in her foot, fever, high pain levels, and decreased activity. At 12:51 p.m. on December 13, 2013, the nurse attending Davis called Gordon (who was on-call for Armstrong) to inform him of Davis's pain. As a result, Gordon changed Davis's then-existing pain management plan to include intravenous (IV) morphine.

Later that same afternoon, Gordon visited Davis and observed firsthand her fever and decreased activity. At that time, Davis reported her pain level was an 8/10, and she was given IV morphine and zofran. Because of the fever and decreased activity level, Gordon decided Davis should stay at the surgical center an additional night.

After Gordon's visit, Davis continued experiencing tingling, fever, and high pain levels. Davis was given several pain medications throughout the day on December 14, 2013, but her pain levels remained high. At 6:50 p.m. on December 14, 2013, Gordon ordered Davis be discharged the following morning. Overnight and into the morning, Davis continued to have fever and pain, and she continued to receive various pain medications. Davis's pain level did not go down until a few hours before her discharge the morning of December 15, 2013.

2

On December 23, 2013, in a follow-up visit to Armstrong's office, Armstrong observed dark discoloration on Davis's toes. Davis reported that this discoloration had begun on December 19, 2013. Davis was diagnosed with gangrene and subsequently received in-patient care for the infection at two different facilities. Although her gangrene initially improved, it ultimately worsened, and on the recommendation of her doctor, Davis had her leg amputated below the knee on January 22, 2014.

Davis brought suit against the Hospital Parties in December 2015, alleging vicarious liability for the negligence of their employees. On May 16, 2016, Davis served the Hospital Parties with expert reports prepared by Dr. Damien Dauphinee and Nurse Claudia Estrada pursuant to section 74.351 of the Texas Medical Liability Act (the "Act"). *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West 2017). The Hospital Parties timely objected to the expert reports as insufficient and moved to dismiss Davis's suit pursuant to the Act. Davis responded and moved for a 30-day extension to cure any deficiencies in the reports. The trial court granted the extension. After Davis served the Hospital Parties with amended reports from Dauphinee and Estrada, the Hospital Parties filed a second motion to dismiss, again asserting the reports were insufficient. The trial court denied the motion, and this interlocutory appeal followed. *See* Tex. Civ. Prac. & Rem. Code § 51.014(9) (West 2017).

## II. ANALYSIS

The Hospital Parties assert that the trial court erred in denying the Hospital Parties' motion to dismiss pursuant to the Act because Davis failed to serve compliant expert reports after being given an opportunity to cure. In support of this issue, the Hospital Parties contend: (1) Davis's nurse expert is not qualified to opine on causation, (2) the standard of care articulated by Davis's nurse expert is conclusory, and (3) Dauphinee's amended expert report is conclusory as to causation.

3

Davis responds that the Hospital Parties waived these arguments. Davis further contends the Hospital Parties' arguments are without merit.

## A.    Standard of review

We review a trial court's ruling on the adequacy of a report under the Act for an abuse of discretion. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam); *Am. Transitional Care Cntrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). The trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to guiding rules or principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam); *Lucas v. Clearlake Senior Living Ltd. P'ship*, 349 S.W.3d 657, 660 (Tex. App.—Houston [14th Dist.] 2011, no pet.). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *Wright*, 79 S.W.3d at 52; *Lucas*, 349 S.W.3d at 660.

## B.    Expert report requirements

Under the Act, a plaintiff asserting negligence by a healthcare provider must timely serve on each defendant an expert report that provides a fair summary of the expert's opinions as of the date of the report regarding (1) the applicable standards of care, (2) the manner in which the care rendered by the physician or healthcare provider failed to meet the standards, and (3) the causal relationship between that failure and the injury, harm, or damages claimed. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (r)(6); *Wright*, 79 S.W.3d at 51. In *Palacios*, the Supreme Court of Texas explained that when considering a motion to dismiss a healthcare-liability claim because of insufficient expert reports, "[t]he issue for the trial court is whether 'the report' represents a good-faith effort to comply with the statutory definition of an expert report." 46 S.W.3d at 878–79.

4

To constitute a "good-faith effort," a report must provide enough information to fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called into question, and (2) it must provide a basis for the trial court to conclude that the claims have merit. *Id.* at 879; *Gannon v. Wyche*, 321 S.W.3d 881, 889 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). The report need not marshal all of the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute: standard of care, breach, and causation. *Palacios*, 46 S.W.3d at 878.

A compliant report must also include an explanation of the basis for the expert's statements and link his conclusions to the facts. *Wright*, 79 S.W.3d at 52; *Gannon*, 321 S.W.3d at 897. A report that merely states the expert's conclusions about the standard of care, breach, and causation does not meet the statutory requirements. *Palacios*, 46 S.W.3d at 879; *see also Wright*, 79 S.W.3d at 53.

If a report is served, "[e]ach defendant physician or healthcare provider whose conduct is implicated . . . must file and serve any objection to the sufficiency of the report not later than the 21st day after the date the report is served . . . failing which all objections are waived." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). If an expert report has not been properly served "because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency." *Id.* § 74.351(c).

A trial court must grant a motion to dismiss a plaintiff's suit if it appears to the court that the expert report does not represent an objective good-faith effort to comply with the definition of an expert report. *Id.* § 74.351(l). To determine the adequacy of the report, the trial court should look no further than the report itself because all the information relevant to the inquiry is contained within the document's four corners. *Palacios*, 46 S.W.3d at 878.

## C. Waiver through stipulation

We first address Davis's waiver arguments. *See Troeger v. Myklebust*, 274 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) ("As a threshold issue, then, we must determine whether [the defendant's] challenges to the expert report have been waived."); *see also Lucas*, 349 S.W.3d at 660–663 (addressing waiver argument first).

Davis makes two distinct waiver arguments. First, Davis asserts that the Hospital Parties waived *all* objections on whether the reports provide a fair summary of the applicable standards because of comments made by the Hospital Parties' counsel at the hearing on the Hospital Parties' first motion to dismiss and Davis's motion for extension to cure. The comments were made in the context of the following exchange between the trial court and counsel:

| | |
|---|---|
| The Court: | Ms. Elliott– |
| Ms. Elliott [Davis's counsel]: | Yes, sir? |
| The Court: | –do you believe that your report is a good-faith effort to put them on notice of what your criticisms are of the Defendants in this case? |
| Ms. Elliott: | Yes, sir. I do. |
| The Court: | I take it by your Motion [for Extension of Time to Cure] that you believe a little tweaking might be in order? |
| Ms. Elliott: | Judge, I do. And I have asked for a record today because Ms. Horne has some limited success in appealing these matters. |
| | She has won one of the 14th Court of Appeals. She has another one that she just took up on appeal that's pending in Harris County. |
| | And so, I really don't want to be part of her continued success. |
| The Court: | Okay. Well, I'm willing to grant you the extension of |

6

|              |                                                                                                                                                                              |
| ------------ | ---------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|              | 30 days.                                                                                                                                                                      |
| Ms. Elliott: | Okay.                                                                                                                                                                        |
| The Court:   | I don't think anybody's been able to prevail on that being an abuse of discretion, do you?                                                                                  |
| Mr. Anderson [the Hospital Parties' counsel]:  I agree, your Honor.                                                                                                                         |
| The Court:   | And, so, what–                                                                                                                                                               |
| Mr. Anderson: | That's a very difficult hurdle to overcome.                                                                                                                                  |
| The Court:   | Pardon me?                                                                                                                                                                   |
| Mr. Anderson: | That's a very difficult hurdle to overcome.                                                                                                                                  |
| The Court:   | I think the Supreme Court pretty much said, if there's any effort that—unless the Court is willing to find that it's not a good faith effort, which I'm not willing to do in this circumstance, the granting of a 30-day extension is not an abuse of discretion. |
| Mr. Anderson: | And I'm not challenging the report as it stands is so deficient as to not constitute good faith.                                                                            |
| The Court:   | Okay.  I do believe Ms. Elliott might have thought that in light of her Motion.                                                                                              |
| Mr. Little [Davis's counsel]:  May I have one sentence, your Honor?  One sentence for this whole process.                                                                                  |
| The Court:   | Sure.                                                                                                                                                                       |
| Mr. Little:  | I think what we're trying to do, Judge, is, since they have a history of appealing these things, is to make sure that we have all our ducks in a role [sic].                 |
| The Court:   | That's fine.                                                                                                                                                                 |
| . . .        |                                                                                                                                                                             |
| The Court:   | I will grant your Motion for 30 days to supplement your report:                                                                                                              |
|              | Is there anything else that you want to get on the record as this time?                                                                                                      |
| Ms. Elliott: | I would ask that they stand on the objections that they made and not bring any new ones should they object a second time.                                                    |

| | |
|---|---|
| Mr. Anderson: | I think I will need to review the amended report in order to make a determination of whether or not there is a basis that objections to be made [sic]. |
| | I don't know if the opinions will be substantially the same or might be additional opinions. |
| The Court: | Well, I think what she's saying is that objections on the substance of the report as it is right now should be frozen and any further objections that y'all make would be related strickly [sic] to any supplementation provided by the experts. |
| Mr. Anderson: | I do not disagree that any additional arguments which we might raise in a subsequent Motion would need to related [sic] to new opinions contained in the amended report. |
| Ms. Elliott: | That's fair, Judge. |
| The Court: | Y'all don't deviate from what was originally in the record from our original objections. |
| Ms. Elliott: | That's fair. |

Davis contends that Anderson's statements that he did not challenge the report "as it stands is so deficient as to not constitute good faith" and "any additional arguments . . . would need to relate to new opinions" constituted a stipulation or admission by the Hospital Parties that the original reports contained a fair summary of the claims. Davis claims that for the Hospital Parties "to attempt to resurrect these objections in the amended motion to dismiss and now in [their] appellate brief constitutes an attempt at a legal 'gotcha' that is patently unfair." We disagree.

A stipulation includes an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys. *Shepherd v. Ledford*, 962 S.W.2d 28, 33 (Tex. 1998); *Ashworth v. Brzoska*, 274 S.W.3d 324, 329 (Tex. App.—Houston [14th Dist.] 2008, no pet.). However, courts should disregard "stipulations" that are unclear or ambiguous. *Ashworth*, 274 S.W.3d at 329–30.

8

A stipulation by parties to a judicial proceeding should not be given greater effect than the parties intended. *Samson Lone Star, Ltd. P'ship v. Hooks*, 389 S.W.3d 409, 438 (Tex. App.—Houston [1st Dist.] 2012), *rev'd on other grounds*, 457 S.W.3d 52 (Tex. 2015); *In re J.M.*, 352 S.W.3d 824, 827 (Tex. App.—San Antonio 2011, no pet.); *In re C.C.J.*, 244 S.W.3d 911, 921 (Tex. App.—Dallas 2008, no pet.); *Laredo Med. Group v. Jaimes*, 227 S.W.3d 170, 174 (Tex. App.—San Antonio 2007, pet. denied); *ExxonMobil Corp. v. Valence Operating Co.*, 174 S.W.3d 303, 311 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). In construing a stipulation by parties to a judicial proceeding, a court must determine the intent of the parties from the language used in the entire agreement, examining the surrounding circumstances, including the state of the pleadings, the allegations made therein, and the attitude of the parties with respect to the issue. *In re C.C.J.*, 244 S.W.3d at 921; *ExxonMobil Corp.*, 174 S.W.3d at 311. The court should disregard the stipulation if it is ambiguous and uncertain in its terms. *Ashworth*, 274 S.W.3d at 329–30; *In re C.C.J.*, 244 S.W.3d at 921; *Jaimes*, 227 S.W.3d at 174.

Considering the surrounding circumstances, the allegations made in the Hospital Parties' motion to dismiss, as well as Anderson's statements with respect to the issue, it does not appear Anderson intended to stipulate that Davis's expert reports contained a fair summary of the claims.

The Hospital Parties' first motion to dismiss plainly asserted that Davis's expert reports failed to provide a fair summary of the claims. The heading on page nine of the Hospital Parties' motion states "**PLAINTIFF'S EXPERT REPORTS FAIL TO PROVIDE A 'FAIR SUMMARY.'**" The Hospital Parties' motion goes on to challenge the expert reports as conclusory on the standard of care and causation.

Anderson's discussion with the trial court at the hearing shows that he intended to maintain these objections on behalf of the Hospital Parties, and both the trial court

and Davis's counsel understood as much. Anderson stated he was not challenging "good faith" only after the trial court indicated that "a good faith effort" was the standard for granting the 30-day extension Davis had requested.[1] Then, after the trial court granted the extension, Davis's counsel informed the court that she would like the Hospital Parties to "stand on the objections" made in their first motion to dismiss. Davis's counsel could not have understood the Hospital Parties to have waived all the objections in their first motion to dismiss at the same time she asked Anderson to maintain those objections but not bring any new ones. Likewise, the trial court indicated that the objections made in the Hospital Parties' first motion to dismiss would be preserved ("frozen").

Although Anderson agreed that any new arguments raised in a second motion to dismiss "would need to related [sic] to new opinions contained in the amended report," this does not appear to be a concession that objections to the amended reports would be limited to objections not raised in response to the original reports or that the Hospital

---

[1] Texas courts have used the term "good faith" in different contexts while addressing the requirements of the Act. As explained above, "good faith effort" has a specific meaning in the context of a claim under the Act. Whether a report constitutes a "good faith effort" is the central issue in determining motions to dismiss under the Act; if a report constitutes a "good faith effort," then it is considered adequate and avoids dismissal. *See Palacios*, 46 S.W.3d at 878–89; *Wright*, 79 S.W.3d at 51–53; *Rosemond v. Al-Lahiq*, 362 S.W.3d 830, 836, 838–39 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *Lucas*, 349 S.W.3d at 660; *see also Samlowski v. Wooten*, 332 S.W.3d 404, 409–10 (Tex. 2011) (noting that under *Palacios* and *Wright*, a "'good faith effort' will produce an adequate expert report for which no extension under section 74.351(c) is needed").

However, some courts have also looked to a "good faith" standard in considering whether a plaintiff should be permitted a 30-day extension to cure any deficiency in a report. *See, e.g.*, *In re Buster*, 275 S.W.3d 475, 477 (Tex. 2008) (per curiam) (citing *Leland v. Brandal*, 257 S.W.3d 204, 208 (Tex. 2008)) ("A report by an unqualified expert will sometimes (though not always) reflect a good-faith effort sufficient to justify a 30–day extension."); *Mangin v. Wendt*, 480 S.W.3d 701, 710 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("If the court finds the report to be deficient—but nevertheless an objective good faith effort to comply—then it may grant the plaintiff one thirty-day extension to cure the deficiency."). *But see Samlowski*, 332 S.W.3d at 407 (majority of Texas Supreme Court could not agree on what standard should govern trial court's exercise of its discretion in determining not to grant 30-day extension).

Parties waived their right to challenge whether Davis's expert reports contained a fair summary of the claims against them. Rather, Anderson appeared to be indicating that he would not make any new arguments with regard to the substance of the reports which did not change after amendment. This interpretation is bolstered by this court's reasoning in *Lucas v. Clearlake Senior Living Ltd. Partnership*, 349 S.W.3d 657 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

In *Lucas*, this court held that a defendant waived its objection to the expert's qualifications to opine on causation when the objection was not made within twenty-one days of the original report but was made only in response to the amended report. *Id.* at 660–63. We reasoned that allowing a new objection to be made to an expert's qualifications when both the original and amended report included opinions on causation (even if deficient) would be "contrary to the clear language of the statute." *Id.* at 663. In other words, a healthcare provider may not make objections to amended reports which it could have but failed to assert in response to original reports. Insofar as amended reports contain content similar to original reports, a healthcare provider may only object to the similar content in the amended reports if it preserved the objections by making them in response to the original reports.

The trial court appeared to understand Anderson's comment in this regard, responding, "Y'all don't deviate from what was originally in the record from our original objections." In addition, Davis's counsel communicated her agreement, stating, "That's fair."

We conclude the intent behind Anderson's comments was to communicate that he did not contest the requested 30-day extension and to agree that any objections raised in response to amended expert reports would not attack any unchanged substance on new grounds. We cannot give Anderson's statements greater effect than intended. Because Anderson's statements do not unambiguously demonstrate Anderson's

11

intention to stipulate that the original reports of Davis's experts contained a fair summary of the claims, we disregard the purported stipulations and reject Davis's first waiver argument.

## D. Waiver for failure to timely raise argument

Davis also contends that the Hospital Parties waived the following "objections" to Dauphinee's report because (1) they raised them for the first time on appeal and (2) they were asserted after the 21-day deadline set by the Act:

- The report does not state Gordon thought the patient's pain to be inordinate;
- The report does not define "inordinate pain;"
- There is no factual basis for the conclusion that Gordon would have acted had he known about new findings; and
- There was no factual basis for the proposition that Davis's overnight condition would have changed the outcome in any way.

Davis cites Texas Rule of Appellate Procedure 33.1, along with *Springer v. Johnson*, 280 S.W.3d 322, 333 (Tex. App.—Amarillo 2008, no pet.), to support her contention that the Hospital Parties may not raise arguments for the first time on appeal. Davis cites *Bakhtari v. Estate of Dumas*, 317 S.W.3d 486, 493 (Tex. App.—Dallas 2010, no pet.), and *Williams v. Mora*, 264 S.W.3d 888, 890–91 (Tex. App.—Waco 2008, no pet.), for the proposition that objections asserted after the Act's 21-day deadline should not be considered.

In *Springer*, the appellate court applied the general principle that failure to preserve a complaint in the trial court precludes a party from raising that issue for the first time on appeal. 280 S.W.3d at 334; *see* Tex. R. App. P. 33.1(a)(1)(A) (stating that to preserve complaint for appellate review, party must make timely request, objection, or motion with sufficient specificity to make trial court aware of its complaint). In *Bakhtari* and *Williams*, the appellate courts applied the rule set forth in the Act that

12

objections not asserted within 21-days of service of the expert report are waived. *Bakhtari*, 317 S.W.3d at 491–94; *Williams*, 264 S.W.3d at 890–91.

While Davis correctly cites these rules, her argument that the Hospital Parties waived the noted objections is misplaced. Where arguments made by a party before the trial court are sufficiently similar to the arguments raised on appeal, there is no waiver. *See Matthews v. Lenoir*, 439 S.W.3d 489, 493–94 (Tex. App.—Houston [1st] 2014, pet. denied) (concluding appellant preserved arguments on appeal where arguments were sufficiently similar to those made before trial court).

Rule 33.1 requires the appealing party to adequately raise issues before the trial court to give the trial court notice of its complaint. *See* Tex. R. App. P. 33.1. The Act requires a defendant healthcare provider "whose conduct is implicated in a report" to "file and serve any objection to the sufficiency of the report not later than the 21st day after the date the report is served . . . ." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). The Hospital Parties met these requirements by filing their first and second motions to dismiss.

In their first motion to dismiss, the Hospital Parties argued that Dauphinee's opinions as to causation were conclusory and referred the trial court to several cases addressing the standard for causation. The Hospital Parties quoted the following portion of *Jelinek v. Casas*:

> An expert cannot simply opine that the breach caused the injury. . . . An expert's conclusion that "in medical probability" one event caused another differs little, without an explanation tying the conclusion to the facts, from an *ipse dixit*, which we have consistently criticized. Instead, the expert must go further and explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented.

328 S.W.3d 526, 539–40 (Tex. 2010).

The Hospital Parties' first motion to dismiss also referred the trial court to the

13

Supreme Court of Texas's analysis in *Wright*, in which the Court opined: "Because the report lacks information linking the expert's conclusion (that [plaintiff] might have had a better outcome) to [healthcare provider's] alleged breach (that it did not correctly read and act upon the x-rays), the trial court could have reasonably determined that the report was conclusory." 79 S.W.3d at 53. The Hospital Parties' first motion to dismiss also quoted the following passage from *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex. App.—San Antonio 2004, no pet.):

> Nowhere in Dr. Shilling's report does he explain the causal connection between Christus' claimed omissions (failure to appropriately triage and evaluate) and Lozano's death. Dr. Schilling offers no explanation of what medical information a more timely triage and evaluation would have revealed, nor does he state what would have been done had Christus not failed to act, what treatment would have or could have been made available, that the patient was a candidate for the unknown treatment, or that the unknown treatment could have or would have been effective.

Referring to the expert reports in *Wright* and *Costello*, the Hospital Parties' first motion argued that Dauphinee's opinions as to causation were "likewise insufficient." The Hospital Parties also argued that Dauphinee failed to "explain how and why the breach caused the injury." The Hospital Parties reiterated these arguments in their second motion to dismiss.

In light of these arguments, the objections Davis now claims the Hospital Parties have waived cannot fairly be characterized as new objections subject to waiver. They are more accurately characterized as facts or explanations supporting the Hospital Parties' argument that Dauphinee's report is conclusory because it failed to explain how and why the breach caused the injury. Because the arguments Hospital Parties raise on appeal are sufficiently similar to or encompassed by those they raised before the trial court, we conclude that the Hospital Parties' arguments were sufficiently preserved.

14

## E.    Qualifications

We now turn to the issues raised by the Hospital Parties.  They first contend that any causation opinions given by Estrada should be disregarded because causation can only be established by Dauphinee.  We agree.

Under the Act, only a physician is qualified to render an expert opinion on causation.  Tex. Civ. Prac. & Rem. Code Ann. §§ 74.351(r)(5), 74.403(a); *Gannon*, 321 S.W.3d at 894.  However, the Act does not require that a single expert address the standard of care, breach, and causation.  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(i).  Expert reports may be read together to determine whether they represent a good-faith effort to satisfy the statutory requirements.  *Id.*; *Gannon*, 321 S.W.3d at 896.  Where, as here, a party alleges negligence against nursing staff, the party may provide a fair summary of the standard of care and breach through a nurse expert while providing a fair summary of causation through a physician expert.

Estrada is not qualified to render an expert opinion regarding causation.  However, this does not foreclose our causation analysis because Davis's physician expert, Dauphinee, opined on causation.  We look exclusively to Dauphinee's report to determine whether Davis satisfied the Act's expert-report requirements regarding the element of causation.

## F.    Causation

The Hospital Parties also contend the trial court erred by denying their motion to dismiss because Dauphinee's opinion on causation is conclusory.  Again, we agree.

An expert report must explain, to a reasonable degree of medical probability, how and why the alleged negligence caused the complained-of injury.  *See Jelinek*, 328 S.W.3d at 536.  The expert must explain the basis of his conclusions and link the conclusions to the facts.  *Wright*, 79 S.W.3d at 52.  An expert report prepared pursuant

15

to the Act may not have an "analytical gap" or a "missing link" between the expert's allegation that the healthcare provider defendant breached the standard of care and the plaintiff's injuries. *See HealthSouth Rehab. Hosp. of Beaumont, LLC v. Abshire*, No. 09–16–00107–CV, 2017 WL 1181380, at \*18–19 (Tex. App.—Beaumont Mar. 30, 2017, no pet.) (mem. op.) (expert report failed to set forth specific link between alleged omissions and injuries). An opinion that contains an obvious gap in the chain of causation does not meet the Act's requirements. *See Wright*, 79 S.W.3d at 53 (expert report failed to explain how not correctly reading x-rays led to injury).

To satisfy the Act's requirement that an expert explain how and why a healthcare provider's breach caused the injury, an expert report must make a good-faith effort to explain how proximate cause is going to be proven. *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, \_\_\_ S.W.3d \_\_\_, No. 15–0909, 2017 WL 2492003, at \*4 (Tex. June 9, 2017). Proximate cause has two components: (1) foreseeability and (2) cause-in-fact. *Id.* For a negligent act or omission to have been a cause-in-fact of the harm, the act or omission must have been a substantial factor in bringing about the harm, and absent the act or omission—i.e., but for the act or omission—the harm would not have occurred. *Id.* An expert report must explain this causal relationship between the breach and injury to satisfy the Act. *Id.* at \*5. An expert's simple *ipse dixit*—an assertion without proof—is insufficient to establish a matter. *Id.* at \*4. Conclusions without explanation or connection to facts are not sufficient. *Id.*

With regard to causation, Dauphinee's report states the following:

> Because of the breaches of the nursing standards of care, set forth above and in Estrada's report, no care and treatment was rendered to Ms. Davis after her discharge. Nurse Audrey Long did not initiate conduct that was consistent with a patient reassessment/intervention/modification for Ms. Davis's discharge, nor did she or anyone else contact or inform Dr. Gordon or any other physician that Ms. Davis had signs and symptoms that were consistent with nursing diagnoses of acute uncontrollable pain,

16

risk for peripheral neurovascular compromise and/or surgical recovery delayed. Nurse Audrey Long also did not invoke the chain of command. Therefore, Ms. Davis was discharged from Humble Surgical Hospital on December 15 at 10:53am. This precluded any further observation or treatment for Ms. Davis, which also precluded an accurate diagnosis of vascular compromise be made, which further precluded removal of the external fixation device and pins which could have provided adequate blood flow to Ms. Davis's lower extremity, thereby saving the leg. In the event that Nurse Audrey Long, or any other nurse at Humble Surgical Hospital had pursued any type of intervention/modification (including invoking the chain of command, which if she would have eventually caused one of the persons listed above, to obtain care for Ms. Davis from another physician, that was competent to treat Ms. Davis), or expressed her working diagnoses to Dr. Gordon or another doctor, that would have given any of the listed healthcare professionals more time to observe and treat Ms. Davis. This, in turn would have led to reassessment and postponing of her discharge to further investigate the signs and symptoms of vascular compromise, which in turn would have effected a prompt removal of the external fixation device and pins. At that time, Ms. Davis could have expected that Dr. Gordon and/or Dr. Armstrong, or a competent physician secured by the use of chain of command to find the signs and symptoms consistent with vascular compromise, diagnose it as such, and removed the external fixation device and the pins in her toes to reduce further vascular compromise. Had this been done prior to her being discharged, the tissue in her lower extremity would have had the blood supply adequate to deliver oxygen and nutrients thereby preventing any further tissue loss. Since this event never occurred, the tissue in Ms. Davis's lower right extremity continued to suffer further tissue loss from inadequate blood supply. Had this condition been discovered and treated at the time of her discharge at 10:53am on December 15th, 2013, and the external fixation device and pins had been removed, and in all reasonable medical probability, a substantial amount of the tissue in her right lower leg would not have died and a below the knee amputation would not have been necessitated and would have, in all reasonable medical probability allowed Ms. Davis to save her right lower extremity.

For the reasons stated above, it is my opinion that the failures of the nurses at Humble Surgical Hospital, specifically including Nurse Audrey Long, contributed to the delay in the appropriate, timely treatment, as specified above, of Ms. Davis. They also individually and/or collectively caused

17

and/or contributed to the continuing vascular compromise and tissue death sustained by Ms. Davis, and ultimately the loss of her leg below the knee, as specified above.

The Supreme Court of Texas's recent decision in *Zamarripa* is controlling. In *Zamarripa*, the Supreme Court held an expert report failed to show proximate cause where the expert report stated that the hospital, through its nurses, breached the applicable standard of care by not stopping a patient's transfer to another hospital, without explaining how they could have done that or if they even had the authority to do so. *See* 2017 WL 2492003, at *5. The Court emphasized that it was the doctor who had ordered the patient's transfer, not the hospital:

> Harlass does not explain *how* Valley Regional permitted or facilitated Flores's transfer, or even whether Valley Regional had any say in the matter. Nor does Spears. Spears states that Valley Regional should have investigated Flores's fibrinogen levels and abdominal pain further, but neither she nor Harlass explains how that would have averted the transfer. Neither Spears nor Harlass explains how Valley Regional had either the right or the means to persuade Dr. Ellis not to order the transfer or stop it when he did.
>
> Zamarripa's response is that the Act does not require such explanations in expert reports. But without factual explanations, the reports are nothing more than the *ipse dixit* of the experts, which we have held are clearly insufficient. The court of appeals erred in holding to the contrary.

*Id.*

The Court went on to note that the Act permits a trial court to grant one 30-day extension and held that the trial court should be given the opportunity to consider an extension because one of the expert reports "seem[ed] to suggest that Valley Regional breached its standard of care in not providing Dr. Ellis information that would have persuaded him to change his mind." *Id.* The Court indicated that to be compliant, an amended report should explain how the additional information would have persuaded the doctor to change his mind, stating "While the report does not explain how that could

18

have happened, we cannot say it would be impossible." *Id.*; *see also Christus Health Gulf Coast v. Davidson*, No. 14–15–00643–CV, 2016 WL 2935715, at \*11–15 (Tex. App.—Houston [14th Dist.] May 17, 2016, no pet.) (mem. op.) (finding expert report failed to satisfy statutory requirement as to causation where there was no explanation of how additional communications between nursing staff and physicians would have affected patient's care).

Although Dauphinee explained the basis of his conclusions and linked the conclusions to the facts in many respects, his opinion on causation contains analytical gaps and missing links which render his opinion conclusory. Dauphinee's report does not explain how the alleged omissions were a substantial factor in bringing about the harm, and absent the act or omission—i.e., but for the act or omission—the harm would not have occurred. Although Dauphinee explains how following the articulated standards of care would have resulted in Davis receiving additional care and ultimately saved her leg, Dauphinee does not explain why this would have happened. Instead, Dauphinee's explanation requires us to make various assumptions. We must assume that the nursing diagnoses or request for intervention/modification communicated to a physician or the chain of command would have caused Gordon or another physician to delay Davis's discharge. Dauphinee does not explain why this would happen. We must assume that during any such delay, Davis would have exhibited signs and symptoms yielding a medical diagnosis of vascular compromise, not the risk of vascular compromise, which as Dauphinee points out "should have been a concern from the beginning." Dauphinee does not state that the signs and symptoms Davis exhibited prior to discharge or during the delayed discharge period would have led a physician to diagnose her with vascular compromise at the time of her discharge or shortly thereafter. Moreover, Dauphinee's opinion is inconsistent in that, on one hand, he states that following the standard of care would have led to a discharge delay

19

providing doctors more time to arrive at a diagnosis and provide treatment, and on the other hand he concludes that Davis's leg likely would have been saved "[h]ad this condition been discovered *and treated* at the time of her discharge *at 10:53am on December 15th, 2013*" (emphasis added).

In an attempt to show that Dauphinee's report is not conclusory, Davis cites to *Adeyemi v. Guerrero*, 329 S.W.3d 241, 245 (Tex. App.—Dallas 2010, no pet.), *Mosely v. Mundine*, 249 S.W.3d 775, 780 (Tex. App.—Dallas 2008, no pet.), and *Moore v. Sutherland*, 107 S.W.3d 786, 791 (Tex. App.—Texarkana 2003, pet denied). In these cases, other appellate courts held that experts had adequately stated causation where a delay in medical diagnosis worsened the patient's condition. *See Adeyemi*, 329 S.W.3d at 245; *Mosely*, 249 S.W.3d at 781; *Moore*, 107 S.W.3d at 791. These cases are distinguishable where the breach at issue is not a delay in medical diagnosis. None of these cases involved nursing diagnoses[2] or communications between nurses and physicians, and none of these cases addressed how a failure to make a nursing diagnosis or to communicate same caused injury.

In the instant case, while the alleged breaches of standards of care and the eventual amputation followed one another in time according to the expert reports, we cannot, without impermissible inferences and assumptions, determine from the reports that the alleged negligence of the Hospital Parties' nursing staff proximately caused Davis's injury. Accordingly, the trial court abused its discretion in denying the Hospital Parties' motion to dismiss Davis's claims against them under the Act. We sustain the Hospital Parties' issue.[3]

---

[2] As Estrada explained in her report, there is an important distinction between nursing diagnoses and medical diagnoses: "Nursing diagnoses focus on human response to stimuli, while medical diagnoses focus on the disease process."

[3] Because we conclude that the expert reports fail to satisfy the statutory requirements as to causation, we need not address the Hospital Parties' argument that Estrada's amended opinion is

### III. CONCLUSION

The trial court abused its discretion in determining that the expert reports were sufficient and in denying the Hospital Parties' motion to dismiss. We reverse the denial of the Hospital Parties' motion to dismiss and render judgment dismissing Davis's claims against the Hospital Parties with prejudice. Because the Hospital Parties are entitled to an award of reasonable attorney's fees and court costs, we remand for a determination of the amount of this award. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b)(1).


/s/    Marc W. Brown
Justice


Panel consists of Justices Christopher, Brown, and Wise.

---

conclusory as to the standard of care. *See* Tex. R. App. P. 47.1.

21