Opinion issued December 28, 2023



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-22-00701-CV

_____

**R.S., Appellant**

**V.**

**D.R.T., Appellee**

---

**On Appeal from the 280th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-49103**

---

## MEMORANDUM OPINION

Appellant R.S.[1] appeals a protective order entered in favor of appellee

D.R.T.  In two issues, R.S. argues that the (1) trial court abused its discretion in

issuing a protective order that tried to supersede any further orders from a different

---

[1]     To protect the minor's identity, we refer to the parties by initials. *See* TEX. R. APP.
P. 9.8 cmt; TEX. FAM. CODE § 109.002(d).

trial court and (2) evidence was legally and factually insufficient to support the protective order.

We affirm.

## Background

On August 13, 2021, D.R.T. filed a first amended application for protective order, asserting that she and R.S. are currently separated and are parents to a minor child, D.R.S.[2]  D.R.T. alleged that R.S. engaged in family violence under section 71.004 of the Texas Family Code, and alternatively argued that R.S. committed acts under Chapter 7B of the Texas Code of Criminal Procedure.  D.R.T. included an affidavit in support of her request, detailing family violence and sexual assault against herself and D.R.S.  R.S. answered the suit with a general denial.

At a protective-order hearing in October 2021, D.R.T. testified that she is married to R.S., they have a four-year-old daughter, D.R.S., and D.R.S. had complained that R.S. had touched her private parts.  Specifically, D.R.S. had used the bathroom and complained that her "private was hurting."  Upon D.R.T.'s questioning, D.R.S. said that R.S. had given her a bath at her grandmother's house and after going to the bedroom, R.S. did not put on her clothing and started touching her private part.

---

[2]     D.R.T.'s application notified the trial court that D.R.S. was subject to continuing jurisdiction of a court under the Texas Family Code due to a pending suit affecting the parent-child relationship in the 257th District Court.

D.R.T. also testified about various incidents involving R.S. and D.R.S. In November 2018, she asked R.S. to bathe D.R.S. When she checked on D.R.S., R.S. was naked with a "full erection," while holding D.R.S. In March 2019, R.S. changed D.R.S.'s diaper and D.R.T noticed she had inflammation or redness in her vagina.

During a bath in December 2020, D.R.S. put her finger on her anus and said she was massaging herself. D.R.T. asked her about it, and D.R.S. responded that R.S. had taught her how and that "it was going to be soft, that it was not going to hurt and that it was just a massage." At bedtime, D.R.S. explained that R.S. would apply diaper rash cream on her private area and would use baby diapers. D.R.T. testified that at the time, D.R.S. was not using diapers anymore "[s]o there was no reason to apply diaper rash creams during the day because she has no rashes and she didn't use pampers or diapers." D.R.S. told D.R.T. that she did not want to go back with R.S.

D.R.T. also testified about domestic violence during their marriage. In August 2003, R.S. grabbed her by the neck. She further recalled an October 2016 incident in which R.S. threw her on the bed, and she slapped him. R.S. started to choke her while his other hand punched her legs. When she tried to call the police, R.S. reminded her that she had an immigration issue.

On cross-examination, D.R.T. testified that she and R.S. separated in April 2019. Regarding a January 2021 incident in which it was alleged that R.S. was touching D.R.S.'s private parts, D.R.T. agreed that she contacted a pediatrician and Child Protective Services (CPS) investigated but found "no cause." She also agreed that a doctor was unable to note any abuse from a February 2021 forensic medical evaluation.

S.B., R.S.'s ex-wife, testified that they have a child who is now 15 years old. S.B. testified that she had no concerns about R.S.'s conduct with their child, who R.S. had been seeing since their divorce when the child was two years old. S.B also testified that R.S. had never been violent with her and was not a violent person.

During R.S.'s testimony, he denied D.R.T.'s allegations, including physical violence or inappropriate touching. Regarding the January 2021 incident, R.S. testified that it never happened. He recalled four CPS investigations, and all the allegations were ruled out. When D.R.S. had a swollen vagina, R.S. explained that, earlier in the day, he had taken D.R.S. to a park where she was playing on a swing. He further testified that D.R.S. was later seen by a hospital nurse, who only found diaper rash.

Regarding the November 2018 incident, R.S. explained that he bathed with D.R.S., but he kept his underwear on and did not have an erection. Regarding the

4

December 2020 incident, R.S. explained that he had given D.R.S. a bath and told her to wash her private parts by herself.

R.S. further testified that, in October 2016, D.R.T. had gotten upset, threw picture frames at him, and slapped him. He testified that he was trying to restrain her from getting more violent and from hurting herself or himself, but that he did not choke her. R.S. testified that he never touched D.R.S. inappropriately and has never been violent with D.R.T.

The trial court questioned R.S. about D.R.S.'s visit to a hospital. When asked if the forensic nurse who examined D.R.S. said she would report the incident to CPS, R.S. responded that the nurse stated, "there was nothing to report."

At the end of the hearing, the trial court informed the parties that it would appoint an amicus attorney to get more information. The record does not include any other activity in the suit until August 2, 2022, when D.R.T. requested a rendition on her application for a protective order.

The trial court held a rendition hearing on August 16, 2022, and explained to the parties that the amicus attorney was unable to do its job because of a language barrier. The trial court then informed the parties of its rendition, and after an entry hearing, signed an August 29, 2022 protective order under Title 4 of the Family Code—finding that family violence has occurred and is likely to occur in the future

5

and that R.S. committed an act constituting a felony offense involving family violence against D.R.T. or D.R.S.

The trial court also found reasonable grounds to believe that D.R.T. or D.R.S. were victims of sexual assault and that R.S. had committed sexual assault against D.R.T. or D.R.S under Chapter 7B of the Texas Code of Criminal Procedure. The trial court made the protective order permanent for D.R.T., but it expires for D.R.S. when she turns 18.[3]

R.S. now appeals.

## Superseding Language

In his first issue, R.S. argues that the trial court's protective order potentially conflicts with an order from a different trial court. Specifically, R.S. argues that the protective order states that it "supersede[s] any other conflicting provisions for [R.S.'s] access to or possession of the child under Cause Number 2019-63709 out of the 257th Judicial District Court of Harris County, Texas."

R.S. admits that at the time this protective order was signed, there was no final order in the divorce proceedings—but "to the extent that the protective order sought to supersede any future order, such an act was an abuse of the trial court's

---

[3]     The protective order provides that R.S. "shall not have any contact with [D.R.S.], unless recommended in writing by a licensed professional child therapist." The same provision was made for access to or possession of D.R.S.

6

discretion." Specifically, R.S. challenges the following section of the protective order:

> IT IS ORDERED that, as per Texas Family Code Section 85.009, the terms for access to and possession of the child by [R.S.] as set forth within this order are valid and enforceable, *and supersede any other conflicting provisions for [R.S.'s] access to or possession of the child under Cause Number 2019-63709 out of the 257th Judicial District Court of Harris County, Texas.*

(Emphasis added).

## A. Preservation of Complaint

To preserve a complaint for appellate review, the complaining party must first present the complaint to the trial court by a timely request, objection, or motion. TEX. R. APP. P. 33.1(a)(1). The complaint raised in the trial court must state the grounds for the ruling sought "with sufficient specificity to make the trial court aware of the complaint." *Id.* "The reason for the requirement that a litigant preserve a trial predicate for complaint on appeal is that one should not be permitted to waive, consent to, or neglect to complain about an error at trial and then surprise his opponent on appeal by stating his complaint for the first time." *Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex. 1982).[4] If a party fails to do this, the complaint cannot be considered on appeal. *See Bushell v. Dean*, 803 S.W.2d 711,

---

[4] *See also Valdez v. Valdez*, 930 S.W.2d 725, 728 (Tex. App.—Houston [1st Dist.] 1996, no writ) (because party never complained to trial court, he never gave trial court opportunity to correct alleged error).

712 (Tex. 1991).[5]  Moreover, a party's complaint on appeal must comport with the objection it made in the trial court. *See Benson v. Chalk*, 536 S.W.3d 886, 895 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

**B.    Analysis**

Here, at the August 16, 2022 rendition hearing, after the trial court informed the parties of its ruling on the protective order, R.S. informed the trial court that they had the divorce trial and the 257th District Court ruled that visitation would be at a neutral location.  R.S. further stated that the child had been examined by CPS, police, and a pediatrician and no one found abuse.  The trial court stated, "Well I did not have anyone testify from CPS or a doctor's office or anything like that.  And I heard the testimony of the applicant and the affidavit was admitted and I am able to judge the credibility of the witnesses and the evidence and this was my decision.  So I stand by my ruling."

The following exchange then occurred:

[D.R.T.]:    The clarification of the parties, given just the nature of the case, would the Court like there to be language in the final protective order that indicates that it supersedes any conflicting orders as it relates to access of the child?

[Court]:    Yes.

---

[5]    *See also Humble Surgical Hosp., LLC v. Davis*, 542 S.W.3d 12, 21 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("Rule 33.1 requires the appealing party to adequately raise issues before the trial court to give the trial court notice of [the party's] complaint.").

[R.S.]:     I would just object to that. One court—they're both district courts and its not like this is appellate court, so.

[D.R.T.]:   Well the family court does indicate that if there are conflicting orders—if Title IV orders conflict with Title V orders, that Title IV order supersede. That is a part of the protective order code. I thought it would be best to include it, so it was clear to the parties.

Without ruling on R.S.'s objection, the trial court stated that entry would occur on August 29, 2022. During the August 29 entry hearing, the following exchange occurred:

[D.R.T.]:   Your Honor, at the close of the rendition last week, I believe it was, I inquired—well I brought to the Court's attention that the parties had obtained orders from another proceeding that were in conflict with the orders that the Court had ordered in the rendition, and inquired as to whether or not we should include language indicating that the terms of the protective order superseded the terms of that order. In drafting the proposed final protective order, I included that language as per the Texas Family Code 85.009, and I indicated the cause of the other Court order and the Court. We sent that to [R.S.] for his review and his objection was that the Court did not indicate, in their rendition that was emailed to us, to include the cause number, but it is our position that for ease of enforcement for law enforcement and for the ability of the parties to know what they are and are not supposed to do and for enforceability purposes, it would not make sense, for lack of a better word, for that order to not be identified. So that is why we are here this morning, Your Honor.

. . .

[R.S.]:     Yes, Judge. And there hasn't been another order entered in the other case at this time. Your order says this order supersedes—or your rendition says this order supersedes

9

any other order—any other order type language. That's what your rendition is. And basically the order they submitted, they're attempting to change the rendition.

[Court]: In what way, shape or form? Just because they're adding some language? How is that—I mean, I'm not understanding.

[R.S.]: Well that's not what your rendition was. I mean so—

[Court]: Okay. [Counsel]—

[R.S.]: So can I add language too or what?

[Court]: [Counsel], come on. Come on. This is—you know, I—you know, some days—some days I often wonder how our profession has gotten off track, honestly, and I don't mean that to be flippant or anything like that. But when you all were here, [D.R.T.] specifically asked of this Court whether or not the Court wanted that language in there and I said yes. This Court has the ability and has jurisdiction, within 30 days, to sign or change or modify or alter any portion of that order, whether it's by motion or whether it's sua sponte. The fact that there is another order, either it's being signed or it will be signed, makes absolutely no sense not to include it. In fact, it would be kind of ridiculous not to include it, because that way when law enforcement or any other lawyer comes upon this order, it will make their job easier to be able to look up the case or to be able to refer to that order. It just makes sense.

So why we needed to have an approach and a hearing on this doesn't make sense to me. When this is just pure common sense lawyering 101. So I'm going to order that the language be in there and that the cause number be in there and it doesn't affect the true substance of the underlying order, as far as what this Court has ordered. So as long as it doesn't affect the true substance, then the Court will grant it. So yes. [D.R.T.], it is granted.

10

[R.S.]:   I don't think that's legal, but you know, that's another argument.

[Court]:   Well [R.S.], here's your remedy.  You can mandamus the appellate court or you can file an appeal once the order's been signed.  And I have no issue with either one of them.  You are free to do that and if the appellate court says otherwise, then I will abide by it or anyone coming after me will do so.  Okay? So that's your remedy.  And it's a very good remedy.  So let's use that instead of fussing about whether or not a cause number should go into a court case.

R.S. generally objected about the order at the August 16 rendition hearing; but, significantly, the trial court did not rule on the objection. *See* TEX. R. APP. P. 33.1.  At the August 29 entry hearing, R.S. appears to have objected that the protective order was not consistent with its rendition because it referred to the pending suit by the name of the trial court—the 257th District Court—and its cause number.  After the trial court informed R.S. that the other suit would be included, R.S. objected only that he did not think the trial court's action was legal.

R.S. now argues on appeal that "to the extent that the protective order sought to supersede any future order, such an act was an abuse of the trial court's discretion."  According to R.S., "the trial court had no jurisdiction to render an order that purports to supersede a future order of another court when the language of the Code does not state that it allows this", D.R.T. should have filed her application in the 257th District Court, and the 257th District Court had authority to supersede the protective order.

11

R.S.'s appellate complaints were not presented to the trial court with sufficient specificity during any of the hearings below and they were not raised in any post-trial motions. *See* TEX. R. APP. P. 33.1. Because R.S.'s appellate complaints do not comport with the general objections that he made in the trial court, they are not preserved for us to consider on appeal.[6] *See id*.

We overrule R.S.'s first issue.

## Sufficiency of Protective Order

In his second issue, R.S. contends that the trial court's protective order is not supported by legally or factually sufficient evidence. Specifically, R.S. argues that no evidence or factually insufficient evidence exists that he committed family violence or that family violence would occur in the future. We disagree.

### A. Standard of Review and Applicable Law

"When the trial court acts as a fact-finder, we review its findings under the legal and factual sufficiency standards." *Boyd v. Palmore*, 425 S.W.3d 425, 429 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000)). When a party who does not have the burden of proof at trial

---

[6] To the extent that R.S. contests the trial court's subject-matter jurisdiction, we have previously held that the 280th District Court has subject-matter jurisdiction over an application for a protective order. *See Pruneda v. Granados*, No. 01-20-00043-CV, 2021 WL 2231267, at *11 (Tex. App.—Houston [1st Dist.] June 3, 2021, no pet.) (mem. op.); *see also Phillips v. Phillips*, 651 S.W.3d 112, 117 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (concluding that 280th District Court has jurisdiction over protective order); TEX. CONST. art. V, § 8; TEX. GOV'T CODE §§ 24.007, 24.112(h), (i), 24.951.

challenges the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).[7]

If more than a scintilla of evidence supports the challenged finding, it is legally sufficient, and we will overrule the issue. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005); *City of Hous. v. Hildebrandt*, 265 S.W.3d 22, 27 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). There is more than a scintilla of evidence if the evidence rises to a level that would enable reasonable and fair-minded people to reach differing conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

In reviewing a factual sufficiency challenge, we examine the entire record. We consider and weigh all the evidence, both in support of and contrary to the challenged finding. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Boyd*, 425 S.W.3d at 429. After considering and weighing all the evidence, we set aside the verdict only if the evidence is so weak, or the finding is so against the great weight and preponderance of the evidence, that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

---

[7]    *City of Hous. v. Hildebrandt*, 265 S.W.3d 22, 27 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (citing *Assoc. Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex. 1998)).

Moreover, under both types of evidentiary challenges, the factfinder, as the sole judge of the credibility of the witnesses and the weight to be given their testimony, has a right to resolve any conflicts in the evidence and to choose which testimony to believe. *City of Keller*, 168 S.W.3d at 819; *see also Boyd*, 425 S.W.3d at 431. And we cannot substitute our opinion for that of the trier of fact, under any circumstance, only because we might reach a different conclusion. *Boyd*, 425 S.W.3d at 429.

## B. Analysis

Protective orders may be issued pursuant to provisions in the Family Code and the Code of Criminal Procedure.[8] *See* TEX. FAM. CODE §§ 81.001 (stating that court shall render protective order if it finds that family violence has occurred and likely to occur in future), 85.001 (same); TEX. CODE CRIM. PROC. art. 7B.003 (stating that court shall issue protective order when reasonable grounds exist that applicant is victim of sexual assault).

---

[8] Both Section 81.001 and Section 85.001 were amended effective September 1, 2023 to delete the required finding that family violence is likely to occur in the future. *See* Act of May 24, 2023, 88th Leg., R.S., ch. 688 §§ 1, 2 secs. 81.001, 85.001, 2023 Tex. Gen. Laws ——, —— (codified at TEX. FAM. CODE §§ 81.001, 85.001). Likewise, Chapter 7B was amended effective September 1, 2023. Because the trial court rendered the protective order before the effective date of these amendments, all references are to the pre-2023 statutes.

Here, the trial court made findings under both Title 4 of the Texas Family Code and Chapter 7B of the Texas Code of Criminal Procedure. *See* TEX. FAM. CODE § 85.001; TEX. CODE CRIM. PROC. art. 7B.003.

In his opening brief, R.S. only argued that the evidence was insufficient to support the trial court's finding of family violence under Title 4 of the Texas Family Code. The trial court's order, however, found that R.S. committed family violence under Title 4 of the Texas Family Code and *also* found that reasonable grounds existed that R.S. committed sexual assault against D.R.T. or D.R.S. under Chapter 7B of the Texas Code of Criminal Procedure. *See Shoemaker v. State for Protection of C.L.*, 493 S.W.3d 710, 715 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("A person can request a protective order under either the Family Code or the Code of Criminal Procedure.").

R.S. has not challenged the Chapter 7B findings in the protective order, which independently support it. *See Straughan v. Girsch*, No. 14-20-00763-CV, 2022 WL 2977049, at *4 (Tex. App.—Houston [14th Dist.] July 28, 2022, no pet.) (mem. op.). As a result, we must affirm the protective order on the unchallenged Chapter 7B findings.[9]

---

[9] *See Hagberg v. City of Pasadena*, 224 S.W.3d 477, 481 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("[W]hen a judgment or order may have been based upon grounds not challenged on appeal, a court of appeals must normally affirm."); *Britton v. Tex. Dep't of Crim. Just.*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.) ("Generally speaking, an appellant must attack all

Even if R.S. had properly challenged the Chapter 7B findings on sufficiency grounds, we conclude sufficient evidence supports the protective order. In that regard, the trial court found that reasonable grounds exist to believe that D.R.T. or D.R.S. were victims of sexual assault by R.S. Under the Penal Code, sexual assault occurs if a person intentionally or knowingly: (A) causes the penetration of the anus or sexual organ of another person by any means, without that person's consent or if a person causes the penetration of the anus or sexual organ of a child by any means. TEX. PENAL CODE §§ 22.011(a)(1)(A), (2)(A).

As detailed above, D.R.T. testified that D.R.S. had made an outcry of sexual assault against R.S., and D.R.T.'s affidavit also alleged that she had been forced to have sex with him against her will. R.S. disputed any allegation of inappropriateness with D.R.T. and D.R.S., he provided explanations to counter the allegations, and he testified that multiple investigations did not find inappropriate behavior.

The trial court thus heard conflicting testimony on whether reasonable grounds existed to believe that D.R.T. or D.R.S. were victims of sexual assault. As the sole trier of fact responsible for judging the credibility of the witnesses, the trial court could have chosen to believe D.R.T. and disbelieve R.S. *See Dolgener v. Dolgener*, 651 S.W.3d 242, 257 (Tex. App.—Houston [14th Dist.] 2021, no pet.).

independent bases or grounds that fully support a complained-of ruling or judgment.").

16

And we may not substitute our opinion for that of the trier of fact simply because we might reach a different conclusion. *Boyd*, 425 S.W.3d at 429.

Instead, under the settled legal sufficiency standard, we must consider all of the evidence in the light most favorable to D.R.T., indulging every reasonable inference in her favor and disregarding any contrary evidence unless a reasonable factfinder could not. *City of Keller*, 168 S.W.3d at 827. In doing so, and as detailed above, we conclude some evidence supports the trial court's finding that there were reasonable grounds to believe D.R.T. or D.R.S. were victims of sexual assault.[10] *See* TEX. CODE CRIM. PROC. art. 7B.003; *City of Keller*, 168 S.W.3d at 827. Further, after considering and weighing all the evidence, we also conclude that the evidence is not so weak, nor is the finding so against the great weight and preponderance of the evidence, as to be manifestly wrong and unjust. *Cain*, 709 S.W.2d at 176.

---

[10] In his reply brief, R.S. contends that Chapter 7B requires a finding that violence is likely to occur in the future. We disagree. "No additional showings beyond status as a crime victim are required to obtain [a Chapter 7B protective order]," including any threat of future harm to the victim. *R.M. v. Swearingen*, 510 S.W.3d 630, 633 & n.2 (Tex. App.—El Paso 2016, no pet.) (explaining that applicant for protective order previously "had to also prove reasonable fear of further harm from the alleged" offender but that "[t]he Legislature abrogated the fear of further harm requirement in 2011"); TEX. CODE CRIM. PROC. art. 7B.003. Because the evidence is sufficient to support the protective order's finding under Chapter 7B and no finding of family violence or future family violence is required under Chapter 7B, it is unnecessary to address R.S.'s argument in his second issue challenging the sufficiency of the evidence to support the finding that family violence occurred and that family violence was likely to occur in the future under Title 4, Family Code section 85.001. *See* TEX. R. APP. P. 47.1.

We therefore overrule R.S.'s second issue.

## Conclusion

Accordingly, for all of the reasons above, we affirm the trial court's protective order in all things.


Terry Adams
Chief Justice


Panel consists of Chief Justice Adams and Justices Landau and Rivas-Molloy.