**Reversed and Remanded and Memorandum Opinion filed December 28, 2018.**



**In The**

# 𝕱𝕠𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑�ˢ

---

## NO. 14-17-00937-CV

---

### ANIL SINHA, MD, Appellant

### V.

### ROGER NIEBUHR, Appellee

---

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 91026-CV**

---

## M E M O R A N D U M   O P I N I O N

This interlocutory appeal arises out of a medical-negligence case brought by a patient alleging negligent post-operative care. We consider whether the plaintiff/patient's expert's report meets the statutory requirements under section 74.351 of the Texas Civil Practice and Remedies Code. Concluding the expert report fails to satisfy the statutory requirements as to causation, we reverse the trial court's order and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of a mid-summer night at the Brazosport Regional Hospital, appellant Dr. Anil Sinha performed a laparoscopic appendectomy on appellee/patient Roger Niebuhr.[1] Niebuhr was discharged before noon the same day, with pain medication and antibiotics. The next day, Niebuhr returned to Dr. Sinha's office complaining of pain and exhibiting protrusions in his abdominal region. A computed tomography (CT) scan revealed three areas of air, blood, and fluid. Niebuhr was sent home with another prescription for pain medication.

Throughout the night and the following day Niebuhr experienced worsening pain, and he was readmitted to the hospital for pain control. Niebuhr's white-blood-cell count measured 16.4 that day and increased to 16.9 the following day. The third day, Niebuhr was discharged. The report does not indicate whether Niebuhr's white-blood-cell count had been measured the day of discharge, or if so, what the count was.

Niebuhr remained at home, in discomfort, under a regimen of oral antibiotics and pain medication. Three days after his second discharge from the hospital, he returned to Dr. Sinha for removal of the sutures. The blood work performed that day revealed Niebuhr's elevated white-blood-cell count, at 27.7. Niebuhr and his wife, sought and obtained a transfer to a hospital in the Texas Medical Center. The following day Niebuhr underwent an exploratory laparoscopy. The surgeon used the laparoscopic incision that had been used to perform the appendectomy eight days earlier. The expert report indicates that the surgeon found multiple abdominal abscesses and hematomas, and that the surgeon found vegetable matter, indicating

---

[1] All facts regarding the treatment came from what is provided in the expert report at issue.

the presence of an intestinal leak. The report states that "the area was irrigated, aspirated, and cleaned," and that "Blake drains were installed." The expert report does not indicate that the location of the leak was identified during the exploratory laparoscopy. When a CT scan was performed the following day, the results of that test were indicative, but not definitive, of the leak's location. The expert report recites verbatim from the radiology records:

> The pelvic fluid collection now contains large amounts of enteric contrast material concentrated with the right lower quadrant. This finding is concerning for a bowel fistula/leak at the level of the cecum, likely related to the recent surgery[]. Unchanged right subhepatic fluid collection which could represent an abscess, seroma or hematoma[].

The expert report then states that "[d]espite the exploratory laparoscopy and drain placement," Niebuhr's condition continued to worsen with an elevated white-blood-cell count. Three days after the laparoscopy, the doctors performed an "open exploration." According to the expert report, during this open procedure Niebuhr was "found to have a necrotic appendiceal base with leakage of fecal matter from the cecum into the peritoneum." At this juncture Niebuhr's state "was not amenable to primary repair," and required "a right hemicolectomy (removal of the right colon) and an end ileostomy, leaving him in intestinal discontinuity."

Niebuhr was discharged five days after the open surgery. His path to recovery required use of an ostomy bag for six months before "re-attachment" surgery.

*Health-Care Liability Suit*

Niebuhr brought the underlying health-care liability suit against Dr. Sinha, alleging negligence, which Niebuhr described as Dr. Sinha's deviation from the standard of care by failing to properly treat complications following the

laparoscopic appendectomy. Specifically, Niebuhr complains of Dr. Sinha's (1) failure to immediately address post-operative bleeding; (2) failure to perform exploratory laparoscopic surgery to locate the source of the post-operative bleeding; and (3) decision to discharge Niebuhr after a period of hospitalization despite Niebuhr's white-blood-cell count having increased.

*Expert Report*

Within days after Dr. Sinha answered the lawsuit, Niebuhr served the report of Dr. Paul J. Chestovich, M.D., in an attempt to meet the expert-report requirement under section 74.351 of the Texas Civil Practice and Remedies Code. Dr. Sinha objected that the report was insufficient. Niebuhr sought to cure the alleged deficiencies by filing an amended report from the same doctor. Dr. Sinha objected again. Niebuhr then filed a third and final report of Dr. Chestovich ("Second Amended Report"). Dr. Sinha again objected, this time in a document entitled "Defendant's Objections to the Sufficiency of the Second Amended Expert Report." In addition to objections, the document contains a request for dismissal of Niebuhr's suit. After a hearing, the trial court signed an order overruling Dr. Sinha's objections. Notably, in the order the trial court did not rule on Dr. Sinha's request for dismissal, nor did the trial court purport to deny all relief set out in Dr. Sinha's "Objections to the Sufficiency of the Second Amended Expert Report."

Twenty days later, Dr. Sinha filed his "Motion to Reconsider Defendant's Objections to the Sufficiency of the Second Amended Expert Report and Motion to Dismiss," repeating the same arguments challenging Dr. Chestovich's opinions as to the standard of medical care applicable to Dr. Sinha's post-operative care and how the alleged deviation caused Niebuhr's post-operative injuries. In this filing Dr. Sinha added a request for attorneys' fees. The trial court denied Dr. Sinha's motion to dismiss and this interlocutory appeal followed.

4

## II. STANDARD OF REVIEW

We apply an abuse-of-discretion standard when reviewing a trial court's decision as to the adequacy of an expert report. *See Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam). The trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to guiding rules or principles. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). Although this court may not substitute its judgment for that of the trial court, the trial court has no discretion in determining what the law is or applying the law to the facts. *Id.*; *Sanjar v. Turner*, 252 S.W.3d 460, 463 (Tex. App.— Houston [14th Dist.] 2008, no pet.).

## III. ISSUES AND ANALYSIS

Dr. Sinha asserts the trial court abused its discretion in denying his motion to dismiss because the expert report is insufficient. In particular, he asserts that the only statements in the report providing an opinion on the standard of care and causation are conclusory.

Under section 74.351 entitled "Expert Report," a claimant, not later than the 120th day after the date a health-care liability claim is filed, must serve on each party one or more expert witness reports addressing liability and causation. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (j) (West, Westlaw through 2017 R.S.); *Lewis v. Funderburk*, 253 S.W.3d 204, 205 (Tex. 2008). The statute defines an "expert report" as

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (West, Westlaw through 2017 R.S.). A trial court shall grant a motion challenging the adequacy of the expert report if the report is not an objective good-faith effort to comply with the definition of an expert report provided in section 74.351(r)(6). *Id.* §§ 74.351(*l*), (r)(6). The law limits the trial court's inquiry to the four corners of the report. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010).

The report must provide sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the plaintiff's claims have merit. *See id.* at 539. Omission of any of the statutory elements prevents the report from being a good-faith effort. *See id.* A report that merely states the expert's conclusions about the standard of care, breach, and causation does not meet the statutory requirements. *See id.* In providing the expert's opinions on these elements, the claimant need not marshal evidence as if actually litigating the merits at trial or present sufficient evidence to avoid summary judgment. *See id.*

**A.  Did the trial court abuse its discretion in finding that the expert's standard-of-care opinion amounted to an objective good-faith effort to comply with the definition of an expert report provided in section 74.351(r)(6)?**

In part of Dr. Sinha's sole appellate issue, he complains that Dr. Chestovich's report fails to state the standard of care applicable to Niebuhr's evaluation and treatment in the first days following the appendectomy.

Dr. Chestovich's report provides the following opinion with respect to the appropriate standard of care:

> When Niebuhr presented the day after surgery with increasing pain and the CT scan showed evidence of significant postoperative bleeding at both the trocar site, the right lower quadrant and the pelvis, the standard of care call for Dr. Sinha to perform exploratory laparoscopic surgery to determine the source of the bleeding, and

6

evacuate the hematoma, and verify the integrity of the appendiceal stump. This should have been performed on 7/17/15 upon receipt of the CT report. Although there was no active bleeding visualized on the CT report, the short time interval between the original operation and the CT scan showing accumulation of blood indicates the presence of ongoing bleeding. Observation alone is not within the standard of care in this case, as post-operative bleeding must be immediately addressed.

Niebuhr's WBC count was abnormal on 7/18-7/19/15 prior to his discharge on 7/20/15. The WBC increased from 16.4 on 7/18 to 16.9 on 7/19. If the infection is controlled, the WBC should be going down. Dr. Sinha should have recognized that the patient was not improving as expected, and an increasing WBC despite administration of appropriate antibiotics should indicate this. Discharging the patient on 7/20 with a known intra-abdominal collection and increasing WBC was a deviation from the standard of care[].[2]

Under his challenge to these opinions, Dr. Sinha argues that Dr. Chestovich failed to specify what constitutes a "short time interval" and that the failure renders Dr. Chestovich's standard-of care-opinion conclusory. Niebuhr, however, provides the reasonable explanation that the "short time interval" refers to the time "between surgery on July 16, 2015 and the CT scan one day later on July 17, 2015."

Dr. Sinha further argues that Dr. Chestovich failed to explain what was supposed to happen and why. Dr. Sinha cites to *Kettle v. Baylor Med. Ctr. at Garland*, in which the Fifth Court of Appeals found an expert's standard-of-care report deficient. The report in *Kettle* only provided that the defendant had a general duty to "promptly consider, diagnose, and then treat" the plaintiff's condition, and complained that more than six hours passed before any

---

[2] As Niebuhr points out in his appellate brief, Dr. Sinha did not challenge this standard-of-care opinion relating to discharging Niebuhr on July 20, 2014. Dr. Chestovich does not purport to provide a distinct causation opinion based on this alleged breach.

"intervention related to the diagnosis of effusion . . . was entertained." 232 S.W.3d 832, 839 (Tex. App.—Dallas 2007, pet. denied). The *Kettle* court noted that the report failed to "specify the steps that should have been taken to diagnose Kettle's condition for timely intervention," and failed to "specify a standard for determining what intervention is timely." *Kettle v. Baylor Med. Ctr. at Garland*, 232 S.W.3d 832, 839 (Tex. App.—Dallas 2007, pet. denied).

Unlike the expert report in *Kettle*, Dr. Chestovich's report provides an explanation of what was supposed to happen — Dr. Sinha was "to perform exploratory laparoscopic surgery" — and explains why — "to determine the source of the bleeding, and evacuate the hematoma, and verify the integrity of the appendiceal stump." Dr. Chestovich's report also contrasts these satisfactory measures to the alternative course of "[o]bservation alone." *See Baty v. Futrell*, 543 S.W.3d 689, 697 (Tex. 2018). While additional details, such as data regarding the relative risks of the course of treatment, could aid the court in understanding whether the opinion was reasonable, "[a]t this preliminary stage, whether those standards appear reasonable is not relevant to the analysis of whether the expert's opinion constitutes a good-faith effort." *See Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 516–17 (Tex. 2017).

The trial court did not abuse its discretion by concluding that Dr. Chestovich's report satisfied the "good-faith effort" requirement as to the standard of care because the report informs Dr. Sinha of the specific conduct called into question. *See Baty,* 543 S.W.3d at 693–94; *Miller,* 536 S.W.3d at 516–17. Therefore, we overrule Dr. Sinha's issue to the extent he challenges the sufficiency of Dr. Chestovich's report as to the standard of care.

**B. Did the trial court abuse its discretion in finding that the expert's causation opinion amounted to an objective good-faith effort to comply with the definition of an expert report provided in section 74.351(r)(6)?**

8

In part of Dr. Sinha's appellate issue, he challenges the sufficiency of Dr. Chestovich's report as to causation, asserting that the report fails to show a causal relationship between Dr. Sinha's alleged breach of the standard of care and Niebuhr's injuries. Dr. Sinha argues that Dr. Chestovich's report is conclusory and contains analytical gaps. Dr. Chestovich's report provides the following opinion with respect to breach and causation:

> In reasonable medical probability, had Dr. Sinha performed exploratory laparoscopic surgery on July 17,2015 or during the hospitalization from July 18, 2015 to July 20, 2015, the leakage and bleeding from the appendiceal base would have been identified and repaired. This would have prevented the persistent leakage of intestinal contents into the peritoneal cavity and the development of necrosis as was found at Memorial Hermann Hospital. It is the persistent bleeding and leakage of intestinal contents which precipitated an infectious and inflammatory process which caused the intestinal necrosis. Prompt surgical intervention during the July 17, 2015- July 20, 2015 time frame to stop the bleeding and intestinal leak would have prevented the need for a colon resection and ileostomy.

> Because Dr. Sinha deviated from the standard of care as previously described, a complication was allowed to develop into a life-threatening condition that altered the life of Roger Niebuhr. Had Dr. Sinha performed exploratory laparoscopic surgery on July 17, 2015 as the standard of care called for, the resulting surgeries at Memorial Hermann hospital would not have been necessary in reasonable medical probability. Thus, Roger Niebuhr would not have developed life-threatening peritonitis and required a colon resection and ileostomy. As a result, Mr. Niebuhr required additional procedures, and required an ostomy bag for 7 months, as well as the other potential lifelong complications associated with such surgeries. These operations and the associated morbidity would not have been necessary had the standard of care been followed.

In challenging the report as to causation, Dr. Sinha poses such questions as "Why does evidence of bleeding necessitate further surgical intervention, rather than observation, one day after the initial surgery?" and "How does a surgery within the

timeframe given prevent necrosis compared to one done later?" Citing *Baty*, Niebhur responds that these questions are more appropriately addressed in other phases of litigation.

Dr. Chestovich has not clearly shown that the leak location was ever identified. Though he seems to make general observations about the location of the leak, he does not reveal precisely the area that would have needed to be addressed. And, while he states that the persistent leakage of intestinal contents initiated the process that caused necrosis, he does not identify when that process began or when necrosis developed. In these respects, we conclude the report suffers from similar deficiencies as those identified in *Karkoutly v. Guerrero*, a case in which the Corpus Christi Court of Appeals found that the plaintiff's expert's report failed to establish how a delay in recommending exploratory abdominal surgery proximately caused the injury. 13-17-00097-CV, 2017 WL 6379795, at *4 (Tex. App.—Corpus Christi Dec. 14, 2017, no pet.) ("If. . .the surgeons were unsuccessful in performing exploratory surgery ten days after the plaintiff's initial operation. . .[the plaintiff's expert] gave no explanation why an exploratory surgery two days afterward would have been better able to determine the source of the infection."); *see also Humble Surgical Hosp., LLC v. Davis*, 542 S.W.3d 12, 26 (Tex. App.—Houston [14th Dist.] 2017, pet. filed)(explaining that the causation opinions required the court to assume that during the delay, the patient would have exhibited discoverable signs, or events would have occurred, that resulted in a diagnosis of that problem that would have propelled a course of treatment that avoided injury).

The expert report does not adequately explain how or why Niebuhr's condition, which continued to worsen with an elevated white-blood-cell count following the exploratory laparoscopic surgery eight days after his appendectomy,

would not have worsened following the exploratory laparoscopic procedure a day after his appendectomy. Dr. Chestovich provides no explanation why the laparoscopic surgery performed eight days after the appendectomy — if performed earlier — would have yielded clear results in identifying the source of the leak and in addressing the problems. Accordingly, in the absence of such an explanation, the report fails to offer a reason free from inconsistency that but for Dr. Sinha's failure to perform the exploratory laparoscopic surgery, the outcome would have been any different. *See Karkoutly*, 2017 WL 6379795, at *4. Therefore, we sustain Dr. Sinha's issue to the extent he challenges the sufficiency of Dr. Chestovich's report as to causation.

## IV. THE THIRTY--DAY EXTENSION TO CURE

The Texas Medical Liability Act allows a trial court to grant one thirty-day extension to cure a deficiency in an expert report, and a court must grant an extension if a report's deficiencies can be cured. *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 461 (Tex. 2017). In the trial court and again in his brief on appeal, Niebuhr requested an opportunity to cure if the court found the expert report deficient. The trial court has yet to grant Niebuhr an opportunity to cure. Although the report does not advance a sufficient factual explanation of causation, the deficiencies do not render Dr. Chestovich's report a non-report, and we cannot say that it is impossible for the deficiencies in the report to be cured. *See id*. Thus, the trial court must be given an opportunity to consider whether to grant Niebuhr a thirty-day extension to cure the deficiencies. *See id*.

## V. CONCLUSION

We find no merit in Dr. Sinha's challenge to the sufficiency of Dr. Chestovich's report as to the standard of care. But, we conclude the trial court abused its discretion in determining that the Dr. Chestovich's report sufficed as to

11

causation. Nonetheless, the trial court must be given an opportunity on remand to consider whether to grant Niebuhr a thirty-day extension to cure the deficiencies as to causation. Therefore, we reverse the trial court's order as to the expert report on causation and we remand to the trial court for further proceedings consistent with this opinion.

/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Donovan and Brown.