**Affirmed and Opinion filed April 2, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-00480-CV

## SANJAR NADERI, D.D.S. AND ANTOINE DENTAL CENTER, LLC, Appellants

### V.

## KANGASABAPATHY "RIKKI" RATNARAJAH, Appellee

**On Appeal from the 164th District Court
Harris County, Texas
Trial Court Cause No. 2017-83384**

### OPINION

Appellee Kangasabapathy "Rikki" Ratnarajah brings a health care liability claim against appellants Sanjar Naderi, D.D.S. and Antoine Dental Center, LLC. The trial court denied appellants' Chapter 74 motion to dismiss based on alleged deficiencies in Ratnarajah's expert report. *See* Tex. Civ. Prac. & Rem. Code § 74.351. We affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND[1]

## A. Factual Background

On July 25, 2016, Ratnarajah went to the Antoine Dental Center seeking treatment for an upper left wisdom tooth abscess. Dr. Naderi or his staff recorded Ratnarajah's medical history, blood pressure, pulse, and weight. They also took several types of X-rays of Ratnarajah's teeth. Dr. Naderi charted various operative and restorative dental procedures Ratnarajah needed. Dr. Naderi's charting showed that teeth numbers 1, 16, 17, and 32 were circled and labeled "SE," presumably indicating surgical extraction. Dr. Naderi extracted tooth #16 that day without complications. Although an abscess on tooth #17 was clearly visible on a panoramic X-ray, Dr. Naderi did not extract tooth #17 or prescribe any antibiotics for Ratnarajah.

Ratnarajah returned to Antoine Dental Center for his post-operative follow-up visit on August 1, 2016. Dr. Naderi determined that Ratnarajah was healing well and advised him to resume his regular activities. Dr. Naderi did not diagnose the abscess on tooth #17 or prescribe antibiotics for Ratnarajah at that time, and there is no evidence that Dr. Naderi suggested to Ratnarajah that tooth #17 be removed.

Ratnarajah returned to Antoine Dental Center and Dr. Naderi on November 9, 2016, complaining of "left sided tenderness." Dr. Naderi's notes reflect "no signs of abscess or inflammation" and "to consult OMFS if problem persists,"[2] even though no new X-rays were taken and there was evidence of an abscess around tooth #17 on the X-rays taken forty-five days earlier. Despite recording that there were no signs of an abscess or inflammation, Dr. Naderi prescribed

---

[1] The background facts of this case are taken from Ratnarajah's expert report.

[2] "OMFS" is an initialism for "oral and maxillofacial surgeon."

Amoxicillin 500 mg without explanation or recording a diagnosis.

Ratnarajah returned to Antoine Dental Center and Dr. Naderi on November 30, 2016, still in pain. The only documentation of this visit is a note that "Pt left office without being seen by a doctor."

Ratnarajah again returned to Antoine Dental Center and Dr. Naderi on February 28, 2017, still complaining of pain and discomfort on the left side. Dr. Naderi's notes reflect that Ratnarajah had "left sided discomfort and swelling, [and] intraoral left sided swelling in lower left area." Dr. Naderi referred Ratnarajah to an oral surgeon for "further evaluation and possible systemic issues contributory to swelling and inflammation" rather than for extraction of a wisdom tooth he was unable or unwilling to perform. No more X-rays were taken, and no antibiotics were prescribed despite the diagnosis of swelling and inflammation. There is no documentation that Dr. Naderi or anyone at Antoine Dental Center had a conversation with Ratnarajah to discuss his issues and possible treatment options. Dr. Naderi did not record anywhere that tooth #17 needed to be extracted.

Ratnarajah saw a medical provider on April 26, 2017, when he had an extraction of tooth #17 and incision and drainage of a large infection that Dr. Naderi failed to identify. Ratnarajah went on to develop osteomyelitis and other large infections that eventually required a resection of his lower left mandible.

## B.    Procedural Background

Ratnarajah sued Dr. Naderi and Antoine Dental Center (collectively, Appellants) in late 2017. Ratnarajah alleged that Appellants' negligent evaluation, treatment, and management of his care resulted in permanent, disabling injuries, including the development of osteomyelitis and other severe infections; the compete loss of his lower left mandible; permanent facial disfigurement and loss of

3

function; permanent loss of many teeth in his lower jaw; and at least three subsequent surgical procedures that would not have been necessary but for Appellants' negligence. Ratnarajah alleged that Antoine Dental Center was liable for Dr. Naderi's actions based on vicarious liability theories.

Because Ratnarajah alleged health care liability claims against Appellants, he timely served Appellants with a Chapter 74 expert report and curriculum vitae of Andrew Hood, D.D.S. *See* Tex. Prac. & Rem. Code § 74.351(a); *see also id*. § 74.001(13) (defining "health care liability claim"). Antoine Dental Center filed objections to Dr. Hood's qualifications. Ratnarajah responded by filing an amended expert report of Dr. Hood. In the meantime, Dr. Naderi had filed objections to Dr. Hood's original expert report. Shortly thereafter, Dr. Naderi filed objections to Dr. Hood's amended expert report that were substantively similar to the objections previously filed in response to Dr. Hood's original expert report. On the same day, Ratnarajah filed a second amended expert report of Dr. Hood, which is the subject of this appeal.

In his report, Dr. Hood set out the following opinions on the applicable standard of care and Dr. Naderi's breach of those standards:

1. **Making the right diagnosis based on the oral and radiographic examination**

   a. Dr. Naderi failed to make a proper diagnosis of a dental infection on tooth #17 that was clearly visible on the panoramic radiograph o[n] his initial examination on July 25, 2016, therefore breaching the standard of care.

      i. Dr. Naderi failed to make this diagnosis on several occasions. Specifically, when the initial examination was done on July 25, 2016 as well as on September 9, 2016 when Mr. Ratnarajah complained of pain and left sided tenderness.

      ii. Dr. Naderi made the wrong diagnosis again on

4

February 28, 2017 when he contributed the swelling and inflammation to "possible systemic issues[.]"

b.    Dr. Naderi makes no record of any infection present in the bone around #17 anywhere in his records.

c.    The panoramic radiograph from July 25, 2016 shows a diagnosis that #17 is necrotic and that infection from the tooth has spread into the bone surrounding #17.

d.    The standard of care would require Dr. Naderi to properly recognize and diagnose the infection in the bone present around the panoramic radiograph taken on July 25, 2016 from the necrotic tooth #17. A necrotic tooth #17 should have been treated by extraction of the tooth, remove the source of the infection to the surrounding bone. Failing to extract the tooth will foreseeably lead to continued growth and diffusion of the infection into the surrounding bone and tissues.

e.    Dr. Naderi breached the standard of care by failing to properly diagnose Mr. Ratnarajah's infection[.]

2.    **Referring Mr. Ratnarajah to the appropriate dental specialist, such as an oral surgeon, for dental treatment he was unable to diagnose or unwilling to perform**

a.    There are many dentists who do not feel comfortable or willing to extract teeth. The standard of care is to diagnose and inform patients of their conditions and to either perform the treatment, or refer the patient to another dentist or specialist such as an oral surgeon who is able and willing to diagnose and provide the treatment.

b.    Dr. Naderi breached the standard of care by failing to refer Mr. Ratnarajah to an oral surgeon for treatment he could not diagnose. If Dr. Naderi was unable to diagnose or unwilling to provide the treatment that Mr. Ratnarajah needed, he should have immediately referred him to another doctor that could.

3.    **Treating an oral infection with antibiotics**

5

a. Dr. Naderi failed to treat an oral infection with antibiotics.

    i. Dr. Naderi's notes indicate that there was "swelling and inflammation" in the area of #17 on February 28, 2017. However, there is no record of any prescription for antibiotics to stop or quell the infection.

b. Dr. Naderi should have prescribed antibiotics when it was obvious that there was "swelling and inflammation" as he notated, in the area around #17. This would have reduced the infection until an oral surgeon could remove the tooth[.]

c. Dr. Naderi breached the standard of care by not providing antibiotics to Mr. Ratnarajah when he recorded swelling and inflammation.

Dr. Hood also opined that due to the above breaches of the standard of care, Ratnarajah would have more probably than not, within all medical/dental probability, not have experienced any of the subsequent surgeries or lost any of his mandible. Dr. Hood then detailed how each breach of the standard of care proximately caused Ratnarajah's injuries. Finally, Dr. Hood summarized his causation opinions as follows:

> Specifically, if Dr. Naderi had correctly diagnosed the infection in the bone around #17 in his initial oral and radiographic examination on July 25, 2016, he would have been able to offer the appropriate treatment of extraction of the tooth, and/or referral to an oral surgeon for removal accompanied with an antibiotic regimen to stop the infection in the bone from growing. However, Dr. Naderi breached the standard of care by incorrectly diagnosing no infection around #17, gave no referral to an oral surgeon, or any antibiotic regimen. He offered no treatment at all. Leaving the infection untreated allowed it to continue to destroy tissue and bone foreseeably causing him to lose a portion of his mandible. This breach of the standard of care was the proximate cause and the substantial factor in bringing about the loss of Mr. Ratnarajah['s] mandible. If the correct diagnosis had been made, the tooth could have been extracted and the source of the

infection would have been removed. Removing the source of the infection before it continued to grow and destroy tissue and bone would have certainly avoided the loss of a portion of Mr. Ratnarajah's mandible. The loss of his mandible was certainly foreseeable because universally known scientific and medical knowledge of infection lead me to the conclusion that what did happen was what should and could have been predicted to happen.

Dr. Naderi and Antoine Dental Center both objected to the second amended report, complaining that the report failed to address the required statutory elements and thus failed to demonstrate a good faith effort to provide them with notice of the basis of Ratnarajah's claims. Ratnarajah responded to Appellants' cumulative objections and set the matter for oral hearing on May 21, 2018. After hearing the parties' arguments, the trial court signed an order overruling all of Appellants' objections to Dr. Hood's second amended expert report and finding that the report was sufficient for purposes of Chapter 74. This interlocutory appeal followed. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(9).

## II.    The Sufficiency of the Expert Report

On appeal, Appellants raise two issues. First, Appellants contend that Ratnarajah's expert report fails to provide a sufficient opinion of the applicable standard of care and breach of that standard. Second, Appellants contend that Ratnarajah's expert report fails to adequately set forth a causal chain linking any alleged harm actually suffered to a specific breach of an applicable standard of care.

## A.    Overview of Standard of Review and Applicable Law

The Texas Medical Liability Act requires that plaintiffs alleging a health care liability claim must serve each defendant with an adequate expert report or face dismissal of their claim. *Miller v. JSC Lake Highlands Ops.*, 536 S.W.3d 510, 511–12 (Tex. 2017) (per curiam) (citing Tex. Civ. Prac. & Rem. Code § 74.351(*l*)).

The expert report must provide a "fair summary" of the expert's opinions regarding the (1) applicable standards of care, (2) manner in which the care rendered by the physician or health care provider failed to meet the standards, and (3) causal relationship between that failure and the injury, harm, or damages claimed. Tex. Civ. Prac. & Rem. Code § 74.351(r)(6).

We review a trial court's decision to grant or deny a motion to dismiss based on the adequacy of an expert report for an abuse of discretion. *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018) (per curiam). Under that standard, appellate courts defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam). A trial court abuses its discretion if it rules without reference to guiding rules or principles. *Id*.

An expert report is adequate if the trial court finds that it constitutes a "good faith effort" to comply with the statutory requirements. *Abshire*, 563 S.W.3d at 223 (citing Tex. Civ. Prac. & Rem. Code § 74.351(*l*)). An expert report demonstrates a good faith effort when it contains sufficient information within the four corners of the document to (1) inform the defendant of the specific conduct called into question and (2) provide a basis for the trial court to conclude the claims have merit. *Id.* "No particular words or formality are required, but bare conclusions will not suffice." *Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011) (footnotes omitted).

## B.    Standard of Care and Breach

Appellants first contend that Ratnarajah's expert report fails to provide a sufficient opinion on the applicable standard of care and breach of that standard. Appellants argue that Dr. Hood's three articulated standards of care and the alleged

8

breaches of those standards are vague and not linked to the facts.

The applicable standard of care is defined according to what an ordinarily prudent physician or health care provider would have done under the same or similar circumstances. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 880 (Tex. 2001); *Tovar v. Methodist Healthcare Sys. of San Antonio, LTD.*, 185 S.W.3d 65, 68 (Tex. App.—San Antonio 2005, pet. denied). Identifying the standard of care is critical because whether a physician or health care provider breached a duty of care cannot be determined without specific information about what the defendant should have done differently. *Abshire*, 563 S.W.3d at 226; *Palacios,* 46 S.W.3d at 880. While a fair summary is something less than a full statement of the applicable standard of care and how it was breached, it must set out what care was expected but not given. *Abshire*, 563 S.W.3d at 226.

Appellants complain that each of the three standards of care and breaches identified by Dr. Hood are impermissibly vague and do not provide needed information on what specifically should have happened differently. As to Dr. Hood's opinion that Dr. Naderi failed to make the correct diagnosis based on the oral and radiographic examination, Appellants argue that while Dr. Hood suggests that the radiographs and examinations performed should have led to a different diagnosis (an infection) than the one given, this only asserts that there should have been a different outcome. And, while Dr. Hood acknowledges that Dr. Naderi diagnosed "possible systemic issues" on February 28, 2017, Appellants assert that he does not explain why that diagnosis was wrong beyond the assertion that it was incorrect. Appellants also assert that Dr. Hood failed to explain exactly what he saw on the radiographs that led him to reach the conclusion that the radiographs showed necrosis.

Appellants raise similar complaints about Dr. Hood's opinion that Dr.

9

Naderi should have referred Ratnarajah to the appropriate dental specialist, such as an oral surgeon, for dental treatment that Dr. Naderi was unable to diagnose or unwilling to perform. According to Appellants, the report is vague because it does not identify the specific kind of referral that would satisfy the standard of care or explain the conduct that should have triggered such a referral, making it "completely unclear why a referral was required."

We disagree that Dr. Hood's opinions concerning the standard of care and breach are vague and not linked to the facts. As shown above, Dr. Hood set out three specific standards of care: (1) making a correct diagnosis based on the oral and radiographic examination; (2) referring Ratnarajah to the appropriate dental specialist, such as an oral surgeon, for dental treatment he was unable to diagnose or unwilling to perform; and (3) treating an oral infection with antibiotics. Although explained in greater detail in the report, Dr. Hood opined that Dr. Naderi breached the standards of care when he failed to diagnose a dental infection on tooth #17 that was "clearly visible" on an X-ray during the initial examination and extract the tooth to remove the infection, failed to refer Ratnarajah to an appropriate dental specialist or oral surgeon when he was unable to diagnose the infection or unwilling to extract the tooth, and failed to prescribe antibiotics that would have reduced the infection when—roughly six months after Ratnarajah's initial visit—Dr. Naderi observed swelling and inflammation around the area of tooth #17.

Appellants' arguments focus on particular statements which, if viewed in isolation, may appear conclusory. Viewing Dr. Hood's report in its entirety, however, places the statements in context and provides sufficient information about what Dr. Naderi should have done differently. *See Baty v. Futrell*, 543 S.W.3d 689, 694 (Tex. 2018) (explaining that courts "must view the report in its

10

entirety, rather than isolating specific portions or sections" to determine whether the report is adequate (citing *Van Ness*, 461 S.W.3d at 144)); *Miller*, 536 S.W.3d at 515 (holding that expert's opinion was sufficient when entirety of expert report was credited and expert's opinions were read in context).

Although explained in greater detail as set out above, Dr. Hood explained that the standard of care required Dr. Naderi to recognize and diagnose the infection in the bone that was "clearly seen" around tooth #17 on the panoramic X-ray taken on July 25, 2016, and to treat the infection by extracting the tooth to remove the source of the infection. Dr. Hood also opined that failing to extract the tooth would foreseeably lead to continued growth and diffusing of the infection into the surrounding bone and tissues. Contrary to Appellants' argument, Dr. Hood did not opine that Dr. Naderi was negligent merely because of a bad outcome. Dr. Hood opined Dr. Naderi's failure to diagnose the infection around tooth #17 and extract the tooth at his initial examination is the primary conduct that fell below the standard of care and allowed the infection to continue to grow.

Dr. Hood's opinions, in context, also demonstrate a basis for the conclusion that Dr. Naderi's diagnosis of "possible systemic issues" was incorrect—that is, the diagnosis was incorrect because Dr. Naderi should have diagnosed the necrotic tooth #17. Additionally, Dr. Hood's opinion that the standard of care required Dr. Naderi to refer Ratnarajah to a dental specialist is sufficiently specific because Dr. Hood explained that the standard of care is to diagnose and inform patients of their conditions and to either perform the treatment or refer the patient to "another dentist or specialist, such as an oral surgeon, who is able and willing to diagnose and provide the treatment"—but Dr. Naderi failed to do any of these things. *See Baty*, 543 S.W.3d at 695–97 (holding expert report adequately stated applicable standard of care and breach despite presence of some conclusory language when

11

report, viewed in its entirety, explained the specific conduct called into question).

Dr. Hood's report adequately identifies the standards of care applicable to Dr. Naderi and the specific actions Dr. Naderi should have taken but did not. *See Miller*, 536 S.W.3d at 516–17; *Palacios,* 46 S.W.3d at 880. More detail is not required at this stage of the proceedings. *See Abshire*, 563 S.W.3d at 226; *Baty*, 543 S.W.3d at 697. Because the report is sufficient as to the standards of care identified and the breaches of those standards, we overrule Appellants' first issue.

## B.    Causation

In their second issue, Appellants contend that the report fails to link the damages sustained by Ratnarajah to any specific breach of an applicable standard of care.

To provide a fair summary of causation, the expert is required to explain "how and why" the physician's or health care provider's breach caused the plaintiff's injury. *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 459–60 (Tex. 2017). A conclusory statement of causation is inadequate; instead, the expert must explain the basis of his statements and link conclusions to specific facts. *Abshire*, 563 S.W.3d at 224. To satisfy the "how and why" requirement, the expert need not prove the entire case or account for every known fact; the report is sufficient if it makes "a good-faith effort to explain, factually, how proximate cause is going to be proven." *Id.* (quoting *Zamarripa*, 526 S.W.3d at 460).

Appellants argue that Dr. Hood did not explain how the three standards of care led to the relevant damages. Instead, according to Appellants, Dr. Hood offered only statements that things would have been different, with little information as to how they would be different. As an example, Appellants

complain that Dr. Hood offered two incompatible statements about causation: he suggested that the correct diagnosis would have led to removal of the tooth before an infection spread, while at the same time he suggested that a consultation any time before February 28, 2017, would have prevented the loss of the mandible. Appellants contend that these statements are incompatible because either the infection had to be treated on July 26, 2016, or it could be referred out at any of the four appointments that occurred before February 28, 2017.

Appellants' contention is incorrect, however, because Dr. Hood opined that if Dr. Naderi had not failed to diagnose the infection during Ratnarajah's initial visit or refer him to an oral surgeon "on any of his previous four visits before February 28, 2017," Ratnarajah would have discovered the infection and it could have been treated before the infection spread. Dr. Hood also opined that if the infection had been discovered and treated before it got "out of control," within "all medical/dental probability, Ratnarajah would have been able to avoid losing a portion of his mandible." Even if the report contained inconsistences, the trial court had discretion to resolve any inconsistencies when deciding whether the report demonstrated a good faith effort to show that Ratnarajah's claim had merit. *See Van Ness*, 461 S.W.3d at 144 (holding that trial court did not abuse its discretion by determining that expert report containing conflicting statements about causation was not conclusory but was a good faith effort to comply with Chapter 74's requirements).

Appellants next argue that Dr. Hood does not say when the infection spread, only that it did. Appellants assert that while Dr. Hood "clearly believes that there was some sort of continuum where this issue might have been treated," there is no detail on when the damage complained of actually occurred, when a consultation was required, and how much, if any, damage was caused by a failure to return to a

13

provider between February 28, 2017, and April 26, 2017, when Ratnarajah was ultimately treated. But the absence of an opinion stating with specificity at what point in the continuum of disease progression became irreversible or when an intervention would have proven timely does not cause an expert's causation opinion to be conclusory at this early stage of evaluation. *Puppala v. Perry*, 564 S.W.3d 190, 201 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

Appellants also argue that Dr. Hood does not explain how Dr. Naderi's failure to give Ratnarajah antibiotics in February 2017 proximately caused the "downstream" surgeries and loss of a mandible. Appellants complain that Dr. Hood does not identify what antibiotics should have been used, if it would have made a difference which were used and the timing of use, or anything else that would clarify the what, why, and when of antibiotics. However, an expert report is not required to contain that level of detail at this early stage of the litigation. *See Abshire*, 563 S.W.3d at 224. Moreover, it is not necessary that Dr. Hood specify the type of antibiotic used. *See Van Ness*, 461 S.W.3d at 144 (stating that report was adequate where it referred only to the need to treat the patient's illness with "antibiotics"); *see also Lakshmikanth v. Leal*, No. 13–08–00389–CV, 2009 WL 140741, at *3 (Tex. App.—Corpus Christi Jan. 22, 2009, pet. denied) (mem. op.) (rejecting argument that expert report was conclusory because it did not mention the specific antibiotics that should have been prescribed and whether such antibiotics would have prevented the patient's severe infection).

Lastly, Appellants assert that a standard of care that "anytime there is swelling and inflammation antibiotics should be given" is overly broad and lacking an explanation as to why such a standard required antibiotics in lieu of other treatment options based solely on swelling. But read in context, Dr. Hood opined that at a time when swelling and inflammation was obvious, Dr. Naderi should

14

have prescribed antibiotics to treat the infection around tooth #17—not to treat swelling—because Dr. Hood expressly stated that Dr. Naderi breached the standard of care when he "failed to treat an oral infection with antibiotics" and that the failure to prescribe antibiotics is what allowed the infection to spread.

To constitute a good faith effort, an expert must explain the basis of his statements and link his conclusions to specific facts. *Abshire*, 563 S.W.3d at 224. Here, Dr. Hood stated that Dr. Naderi failed to correctly diagnose the infection around tooth #17, refer Ratnarajah to an oral surgeon, or prescribe antibiotics on February 28, 2017, when it was obvious that there was swelling and inflammation, and that these failures left the infection untreated and caused it to continue to destroy tissue and bone, which foreseeably caused Ratnarajah to lose a portion of his mandible. We conclude that Dr. Hood's expert report sufficiently explains the basis of his statements and links his conclusions to facts. *See id.* at 225 (holding that expert report adequately linked alleged breach of standard of care to a delay in diagnosis and ultimate injury); *Van Ness*, 461 S.W.3d at 144 (holding that expert report alleging that physician's failure to timely diagnose child's pertussis and start treatment with antibiotics and to continue that treatment as indicated by diagnostic testing probably would have prevented child's death); *see also Mosely v. Mundine*, 249 S.W.3d 775, 780–81 (Tex. App.—Dallas 2008, no pet.) (holding that expert opinion on causation was not conclusory when expert linked physician's failure to detect cancer at an early stage to a delayed diagnosis requiring invasive and aggressive treatment and significant reduction in patient's life expectancy). We overrule Appellants' second issue.

### III. CONCLUSION

Because Ratnarajah's expert report provided a fair summary of the expert's opinions regarding the applicable standards of care, a statement identifying the

15

manner in which the care rendered by Dr. Naderi failed to meet the standards, and an explanation of the causal relationship between that failure and the injury, harm, or damages claimed, the trial court did not abuse its discretion in denying Appellants' motion to dismiss. *See* Tex. Civ. Prac. & Rem. Code § 74.351(r)(6). We overrule Appellants' issues and affirm the trial court's order.

/s/    Ken Wise
        Justice

Panel consists of Justices Wise, Zimmerer, and Spain.