**Reversed and Remanded and Opinion and Dissenting Opinion filed March 31, 2020.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-01014-CV

---

### BAYLOR COLLEGE OF MEDICINE, Appellant

### V.

### CINDI C. DAVIES AND JOHN DAVIES, Appellees

**On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2018-05395**

## O P I N I O N

This is one of two companion health-care-liability cases arising from the seven-month delay in diagnosing, and thus treating, appellant Cindi C. Davies's ovarian serous borderline tumor. *See Hall v. Davies*, No. 14-18-01013-CV, 2020 WL _____, (Tex. App.—Houston [14th Dist.] March 31, 2020, no pet. h.). In both cases, the appellant health-care defendants challenge the trial court's denial of their respective motions to dismiss the claims against them on the ground that Dr. Mark

Levin's supplemental expert report insufficiently addresses causation. We agree that Dr. Levin's report is conclusory in that his statement that Davies had only a stage I tumor when her condition should have been diagnosed is supported only by *ipse dixit*. The trial court therefore abused its discretion in overruling the appellant's objection on that ground and in denying the appellant's motion to dismiss. We accordingly reverse the trial court's judgment and remand the case for the trial court to determine and award to the appellant its reasonable attorney's fees and costs of court before dismissing with prejudice the claims against the appellant.

## I. BACKGROUND

The following background is drawn from the unchallenged expert reports in the record.

Davies was a patient of gynecologist Hailey Hall at Texas Children's Hospital Pavilion for Women; we refer to Dr. Hall and the Hospital collectively as "the Hospital Defendants." Dr. Hall collected tissue samples from Davies in July 2015 to screen for malignant neoplasm of the cervix. The samples were analyzed by Baylor College of Medicine employee Dr. Edwina Popek, who commented in her August 2015 pathology report, "The papillary epithelium may represent a papillary serous tumor within the abdomen." Dr. Hall inaccurately wrote to Davies, "Cindi, your biopsy was normal and only showed that you had had the IUD in place (psammomatous calcifications). No cancer or precancer." At Davies's follow-up appointment later that August, Dr. Hall did not correct this misinformation or recommend surgery.

At Davies's next appointment in late February 2016, Dr. Hall reviewed the August 2015 pathology report and informed her for the first time that the report stated that the lab results "may be indicative of papillary serous tumor." About a week later, and nearly seven months after the abnormal laboratory findings were

2

reported, Davies had surgery, and it was found that she had stage IIIB ovarian serous borderline tumor, "a tumor of low-malignant potential."

According to the unchallenged expert reports in the record, Dr. Hall's conduct breached the standard of care. The authors of the unchallenged reports further opine that the Hospital and Baylor breached their respective standards of care: the Hospital, by failing to mandate that physicians read the complete report of pathology findings, and Baylor, by failing to have, communicate, and ensure compliance with, a policy requiring employees to "clearly and unmistakably" communicate critical adverse information or "unexpected findings" in the pathology report and to document follow-up communication with the treating physician.

Dr. Levin was the only expert to opine on the issue of causation. The trial court sustained the objections to Dr. Levin's initial report[1] and granted Davies a thirty-day extension to cure the deficiencies. According to Dr. Levin's supplemental report, the defendants' breaches of their respective standards of care delayed Davies's treatment, which "caused her tumor to advance from a Stage I to a Stage 3B tumor." According to Dr. Levin, this progression "made the removal surgery more extensive, invasive, and difficult, made her post-surgical course more serious, complicated, and expensive, and made her prognosis and life expectancy worse." All of these results were predicated on Dr. Levin's position that Davies had stage I cancer when the first tissue sample was collected and analyzed in the summer of 2015.

Baylor and the Hospital Defendants objected that Dr. Levin's foundational premise that Davies had a stage I tumor in the summer of 2015 is mere conclusory *ipse dixit*, rendering his expert report insufficient to maintain the action. The trial

---

[1] The original objections clearly stated that Dr. Levin's original report was conclusory as to the stage of cancer. The supplemental report did not cure the conclusory issue.

court overruled their objections and denied their respective motions to dismiss. In this interlocutory appeal, Baylor challenges that ruling.

## II. STANDARD OF REVIEW AND GOVERNING LAW

A core purpose of the Texas Medical Liability Act is to expeditiously eliminate frivolous health-care-liability claims while preserving potentially meritorious ones. *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011). To enable courts to distinguish between the two, the Act sets forth a regime that requires a claimant to timely serve each defendant physician and health-care provider with adequate expert reports. *Id.* at 411; TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). The reports must both identify for the defendant the specific conduct questioned and provide the trial court a reasonable basis to conclude that the claims have merit. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001).

To do so, an expert report must provide a fair summary of the expert's opinions regarding the applicable standard of care, the manner in which the defendant failed to meet that standard, and the causal relationship between that failure and the claimed injury or harm. *Id.* § 74.351(r)(6); *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam); *Palacios*, 46 S.W.3d at 878–79. A report does not fulfill the statutory requirements if it merely states the expert's conclusions about the standard of care, breach, and causation. *Palacios*, 46 S.W.3d at 879. The expert instead "'must explain the basis of his statements to link his conclusions to the facts.'" *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 459–61 (Tex. 2017) (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)).

If a defendant challenges a report's adequacy, the trial court must determine whether the report represents an objective good-faith effort to fulfill the Act's

4

requirements. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*). A report meets that standard if it includes within the four corners of the document the statutorily required elements and explains their connection to the defendant's conduct in a non-conclusory way. *See Baty v. Futrell*, 543 S.W.3d 689, 693–94 (Tex. 2018); *Samlowski*, 332 S.W.3d at 410; *Wright*, 79 S.W.3d at 52. The necessary information must be found in the text of the report itself; omissions will not be supplied by inference. *Scoresby v. Santillan*, 346 S.W.3d 546, 555–56 (Tex. 2011); *Wright*, 79 S.W.3d at 53. If an expert report is deficient as to a particular defendant, the trial court may grant the claimant a single thirty-day extension to cure its shortcomings.

We review a trial court's ruling on an expert report's sufficiency for abuse of discretion. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam). In doing so, we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo. *Id.* We will conclude that the trial court abused its discretion if it rules without reference to guiding rules or principles. *Id.* (citing *Samlowski*, 332 S.W.3d at 410).

### III. THE EXPERT REPORT ON CAUSATION

In a medical-negligence case, as in negligence cases generally, the claimant must prove that the alleged harm would not have occurred but for another's breach of duty. *See Zamarripa*, 526 S.W.3d at 460. The claimant's expert report need not prove the claim; the report is merely a qualified expert's opinion that the claimant can do so. *See id.* In a delayed-diagnosis case such as this, an expert report is needed to explain how the complained-of harm would not have occurred if the diagnosis had been timely. *See Kapoor v. Estate of Klovenski*, No. 14-09-00963-CV, 2010 WL 3721866, at *4–5 (Tex. App.—Houston [14th Dist.] Sept. 23, 2010, no pet.) (mem. op.).

In the dispositive argument in this appeal, Baylor contends that Dr. Levin's assertion that Davies had only Stage I cancer at that time is conclusory, being supported merely by *ipse dixit*. We agree.

An expert report must include sufficient detail to provide a "reasonable basis" for concluding that the case against the defendant has merit. *Jelinek*, 328 S.W.3d at 539–40. To address causation sufficiently for the trial court to reasonably conclude that the claim has merit, "the expert must explain the basis of his statements and link conclusions to specific facts." *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 224, 226 (Tex. 2018) (citing *Jelinek*, 328 S.W.3d at 536). The explanation, too, must be factual, for "without factual explanations, the reports are nothing more than the *ipse dixit* of the experts, which . . . are clearly insufficient." *Zamarripa*, 526 S.W.3d at 461. Such testimony is conclusory as a matter of law. *Arkoma Basin Exploration Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 389 (Tex. 2008).

Because Dr. Levin's opinion that Davies had stage I cancer in the summer of 2015 is conclusory, his report fails to provide a reasonable basis to conclude that the delay in diagnosis caused Davies's cancer to advance from stage I to stage IIIB. The portion of Dr. Levin's report addressing the stage of Davies' cancer in the summer of 2015 states in its entirety as follows:

> The original August 6, 2015 surgical pathology report, for the surgery performed on July 23, 2015, attached to this report as Exhibit 2, states:
>
> FINAL DIAGNOSIS:
>
> ENDOMETRIUM CURETTAGE: PAPILLARY CLUSTERS OF EPITHELIUM WITH PSAMMOMATOUS CALCIFICATIONS (SEE COMMENT).
>
> Comment:
>
> The papillary epithelium may represent a papillary serous tumor within the abdomen. It is not the usual

> changes associated with IUD. The H&E and all immunohistochemistry stains were reviewed at Houston Methodist Hospital GYN consensus conference with agreement with this diagnosis. (ejp/ljp)

> Based on my experience, training, and expertise, this pathology report means that Mrs. Davies had at most a stage I tumor. *See* Exhibit 2 (8/6/15 Pathology Report).

Dr. Levin states a conclusion (that Davies "had at most a stage I tumor" when Dr. Hall collected the tissue sample analyzed in the August 2015 report) and identifies the "specific fact" from which he drew this conclusion (that being the quoted language of the pathology report). But the pathology report does not say that Davies does, in fact, have cancer, much less that she has cancer of a specific stage. Thus, without more, Dr. Levin's opinion is conclusory. *See Bustamante v. Ponte*, 529 S.W.3d 447, 462 (Tex. 2017) (opinion is conclusory if the stated basis for the opinion provides no support). What is needed to make Dr. Levin's opinion non-conclusory is a factual explanation *why* the quoted language from the pathology report means what Dr. Levin says it means. It is the expert's explanation that supplies the necessary link between the expert's conclusion and the underlying facts. *See Zamarripa*, 526 S.W.3d at 460; *Earle*, 998 S.W.2d 890.

In lieu of a factual explanation why the quoted language from the pathology report means that Davies had stage I cancer, Dr. Levin merely asserts that it is so "[b]ased on [his] experience, training, and expertise." Certainly Dr. Levin's experience, training, and expertise are part of the credentials that qualify him as an expert witness. *See* TEX. R. EVID. 702. But that is not enough. "Credentials qualify a person to offer opinions, but they do not supply the basis for those opinions." *Burrow v. Arce*, 997 S.W.2d 229, 236 (Tex. 1999). An expert instead must explain why the relied-upon facts led to the expert's conclusion. *See Bombardier Aerospace*

7

*Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 223 (Tex. 2019); *Abshire*, 563 S.W.3d at 224, 226; *Zamarripa*, 526 S.W.3d at 460; *Earle*, 998 S.W.2d at 890.

By substituting a reference to his experience, training and expertise in place of a factual explanation as to why the report means that Davies's cancer had not progressed beyond stage I, Dr. Levin states no more than that one can "'take his word for it' because of his status as an expert." *Windrum v. Kareh*, 581 S.W.3d 761, 769 (Tex. 2019). This same assertion is echoed in Davies's appellate brief. Davies's only response to Baylor's *ipse dixit* argument is that the report means that Davies had stage I cancer because a "witness with unchallenged credentials" said so. That, however, is precisely what *ipse dixit* means. *See Ipse dixit*, BLACK'S LAW DICTIONARY (11th ed. 2019) (*ipse dixit* is Latin for "he himself said it"). And as the Supreme Court of Texas recently stated, "under the well-established case law of this Court, an expert's statement or opinion is conclusory when . . . he offers only his word that the bases offered to support his opinion actually . . . support his opinion." *Windrum*, 581 S.W.3d at 769.

To support a claim that a delayed diagnosis allowed the patient's medical condition to worsen or disease to progress, an expert must explain how and why the facts support this conclusion. For example, in *Naderi v. Ratnaraj*, 572 S.W.3d 773 (Tex. App.—Houston [14th Dist.] 2019, no pet.), a dentist failed to diagnose and treat an infected tooth abscess, causing the patient to lose part of his lower jaw. *Id.* at 776. The expert explained that the abscess was "clearly visible" on a radiograph taken at the initial visit, and that the radiograph showed the infection from the tooth spreading into the surrounding bone, but the dentist did not extract the tooth or prescribe antibiotics. *Id.* at 775, 776–77. Seven months later, the patient additionally suffered from swelling and inflammation inside his mouth, and still the dentist took no action. *Id.* at 775–76. Unlike here, the expert in *Naderi* supported his causation

opinion by describing how medical records documented the appearance of additional symptoms over time. We held that the trial court did not abuse its discretion in denying the dentist's motion to dismiss. *Id.* at 782–83.

We reached the same result in a case concerning the delayed diagnosis of cancer. *See Kapoor*, 2012 WL 8017139. There, the expert detailed the patient's increased pain and swelling during the course of the delay in diagnosis. *See id.* at *9.

Similarly, the Fifth Court of Appeals rejected an argument that an expert report about the delayed diagnosis of cancer was conclusory where the expert explained that the defendant physician failed to identify a one-centimeter nodule on the patient's chest x-ray, and twenty-one months later, the nodule had grown to six times that size and extended into the patient's lung tissue. *See Mosely v. Mundine*, 249 S.W.3d 775, 780–81 (Tex. App.—Dallas 2008, no pet.).

Dr. Levin's causation opinion rests entirely on the difference in the stage of Davies's cancer as reported in the August 2015 and March 2016 pathology reports. The March 2016 report states that Davies has a stage IIIB ovarian serous borderline tumor, but the August 2015 report states only that Davies may have a tumor, and it does not state the tumor's stage. Absent an explanation why the first pathology report means that Davies had a stage I tumor, Dr. Levin's causation opinion is conclusory, and as a matter of law, a conclusory expert opinion does not afford a reasonable basis to conclude that a claim has merit. *See Jelinek*, 328 S.W.3d at 539–40.

We therefore conclude that the trial court abused its discretion in overruling Baylor's objection and denying its motion to dismiss.

## IV. CONCLUSION

Expert reports serve to show that a plaintiff's health-care-liability claim is neither frivolous nor lacking in expert support. *See Kelly v. Rendon*, 255 S.W.3d

665, 679 (Tex. App.—Houston [14th Dist.] 2008, no pet.). But an expert opinion is "fundamentally unsupported" when the only link between the expert's conclusion and the underlying facts is the expert's "own say-so." *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 806 (Tex. 2006). We accordingly reverse the portion of the trial court's order denying Baylor's motion to dismiss and we remand the claims against Baylor with instructions to the trial court to assess and award to Baylor its reasonable attorney's fees and costs of court and to dismiss the claims against Baylor with prejudice. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b), (c).


/s/    Tracy Christopher
Justice


Panel consists of Chief Justice Frost and Justices Christopher and Bourliot (Bourliot, J., dissenting).