**Affirmed and Memorandum Opinion filed May 24, 2022.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-21-00177-CV

---

## DHRUTI B. PATEL, M.D., Appellant

## V.

## MICHAEL BAKER, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF DEANNE BAKER, DECEASED, Appellee

---

### On Appeal from the 189th District Court
### Harris County, Texas
### Trial Court Cause No. 2020-30848

---

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, appellant Dhruti B. Patel, M.D., challenges the trial court's order denying her motion to dismiss a health care liability claim asserted by appellee Michael Baker, individually and as representative of the estate of Deanne Baker, deceased. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9). For the reasons below, we affirm the trial court's order.

## BACKGROUND

Deanne Baker arrived at the Houston Methodist Hospital emergency room on June 5, 2018, complaining of generalized weakness. Dr. Patel examined Deanne and took her medical history. That same day, Dr. Patel ordered that Deanne was permitted "activity as tolerated" and "up with assistance."

Dr. Patel ordered that Deanne be discharged from the hospital on June 7, 2018. As part of her discharge orders, Dr. Patel said Deanne was to "ambulate with assistance or [an] assistive device."

While she was being discharged from the hospital, Deanne used a walker to get up from the bed and move into a wheelchair. As she moved towards the wheelchair, Deanne lost her balance, fell, and landed on her hip. Deanne suffered a pelvic and hip fracture and was in severe pain. Deanne was transferred to a rehabilitation facility, where she continued to have severe pain and difficulty with mobility. Deanne's condition continued to deteriorate and she died of cardiac arrest on June 24, 2018.

Deanne's husband, Michael, filed suit in May 2020, asserting health care liability claims against Houston Methodist Hospital and a registered nurse involved in Deanne's care. Michael amended his petition to add Dr. Patel as a defendant.

Pursuant to section 74.351 of the Texas Medical Liability Act, Michael served the defendants with an expert report and a supplemental expert report from Dr. Benny Gavi. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351. In his reports, Dr. Gavi opined that Deanne "had multiple risk factors" indicating that she "was at high risk for falls." According to Dr. Gavi, Dr. Patel had an obligation to identify Deanne as a high fall risk and to communicate appropriate orders for her condition, including fall precautions. Dr. Gavi opined that Dr. Patel breached this standard

2

by placing orders stating Deanne was permitted "activity as tolerated" and only required "up with assistance." Dr. Gavi concluded that Deanne's fall would have been prevented if Dr. Patel had provided instructions appropriate to Deanne's condition.

Dr. Patel objected to Dr. Gavi's reports and moved to dismiss Michael's health care liability claim. Michael responded to Dr. Patel's objections and filed a motion for an extension of time "in the event that the Court should find any deficiency in Dr. Gavi's report." *See id.* § 74.351(c).

The trial court signed an order denying Dr. Patel's motion to dismiss on March 15, 2021. The trial court did not rule on Michael's motion for an extension of time. Dr. Patel filed this interlocutory appeal. *See id.* § 51.014(a)(9).

## ANALYSIS

On appeal, Dr. Patel asserts the trial court erred in denying her motion to dismiss because Dr. Gavi failed to provide a fair summary of his opinions regarding the applicable standard of care, the alleged breach of those standards, and the causal relationship between the alleged breach and the injuries claimed. We address these arguments below.

## I.     Overview of the Applicable Law and Standard of Review

The Texas Medical Liability Act requires that plaintiffs alleging a health care liability claim serve each defendant with an expert report. *See id.* § 74.351(a); *Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 511 (Tex. 2017) (per curiam). An adequate expert report provides a "fair summary" of the expert's opinions regarding (1) the applicable standards of care, (2) the manner in which the care rendered failed to meet those standards, and (3) the causal relationship between that failure and the injury, harm, or damages claimed. Tex. Civ. Prac. &

3

Rem. Code Ann. § 74.351(r)(6); *Naderi v. Ratnarajah*, 572 S.W.3d 773, 778 (Tex. App.—Houston [14th Dist.] 2019, no pet.). To determine whether an expert's report provides a "fair summary" of these elements, we are limited to the four corners of the report. *C-HCA, Inc. v. Cornett*, 635 S.W.3d 295, 299 (Tex. App.—Houston [14th Dist.] 2021, no pet.).

"The purpose of the expert report requirement is to weed out frivolous malpractice claims in the early stages of litigation, not to dispose of potentially meritorious claims." *Tex. Children's Hosp. v. Knight*, 604 S.W.3d 162, 169 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). Therefore, it is not necessary that the expert report marshal all the plaintiff's proof; rather, an expert report is adequate if it constitutes a "good faith effort" to comply with the statutory requirements. *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018) (per curiam); *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). This requires that the report "(1) inform[] the defendant of the specific conduct called into question and (2) provid[e] a basis for the trial court to conclude the claims have merit." *E.D. v. Tex. Health Care, P.L.L.C.*, No. 02-0657, 2022 WL 1434658, at \*3 (Tex. May 6, 2022) (per curiam); *Baty v. Futrell*, 543 S.W.3d 689, 693-94 (Tex. 2018). At this stage of litigation, "whether the expert's explanations are 'believable' is not relevant to the analysis of whether the expert's opinion constitutes a *good-faith effort* to comply" with the Texas Medical Liability Act. *E.D.*, 2022 WL 1434658, at \*3 (emphasis in original).

We review a trial court's decision to grant or deny a motion to dismiss based on the adequacy of an expert report for an abuse of discretion. *Abshire*, 563 S.W.3d at 223; *Naderi*, 572 S.W.3d at 778. The trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to guiding rules or principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). "[U]nder an abuse-

4

of-discretion standard, close calls must go to the trial court." *E.D.*, 2022 WL 1434658, at \*3 (internal quotation omitted).

## II. Dr. Gavi's Reports

Dr. Patel's arguments challenge the sufficiency of Dr. Gavi's reports on each of the three necessary elements:  standard of care, breach, and causation. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6).  We address standard of care and breach together before turning to Dr. Patel's challenge to Dr. Gavi's opinion on causation.

### A. Standard of Care and Breach

Standard of care is defined by what an ordinarily prudent physician would have done under the same or similar circumstances. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 880 (Tex. 2001); *Kingwood Pines Hosp., LLC v. Gomez*, 362 S.W.3d 740, 747 (Tex. App.—Houston [14th Dist.] 2011, no pet.).  The stated standard of care need not be complicated for it to be sufficient. *See Baty*, 543 S.W.3d at 697; *see also Keepers v. Blessett*, No. 01-18-01020-CV, 2019 WL 1523368, at \*5 (Tex. App.—Houston [1st Dist.] Apr. 9, 2019, no pet.) (mem. op.) ("At times, the standard of care can be fairly basic.").

Identifying the standard of care is critical because whether a physician breached a duty of care cannot be determined without specific information about what the defendant should have done differently. *Abshire*, 563 S.W.3d at 226; *Palacios*, 46 S.W.3d at 880.  "While a fair summary is something less than a full statement of the applicable standard of care and how it was breached, it must set out what care was expected but not given." *Naderi*, 572 S.W.3d at 779; *see also E.D.*, 2022 WL 1434658, at \*3.

Here, Dr. Gavi's report begins with a recitation of Deanne's relevant

5

medical history. Dr. Gavi states that, when Deanne presented at the hospital in June 2018, she had a history of stroke, myocardial infarction, and chronic left-side weakness. Dr. Gavi notes that Deanne used a walker and wheelchair at home and required dialysis three times a week.

Dr. Gavi states that, after Deanne was admitted to the hospital, her differential diagnosis included possible stroke, seizure, dehydration, and acute decompensation after dialysis. Deanne was visited by Dr. Boyareddigari, an emergency room physician, who recommended fall precautions.

Later that same day, Deanne was visited by Dr. Patel, who took Deanne's history and performed a physical examination. Dr. Patel noted that Deanne had generalized weakness "of unclear etiology, possibly related to a TIA/stroke, or possibly cardiac in origin." Dr. Patel ordered that Deanne was permitted "activity as tolerated" and "up with assistance."

Two days after she was admitted to the hospital, Dr. Gavi states that Deanne was assessed by an occupational therapist, who concluded that Deanne "was unable to stand on her weak leg." A physical therapist also noted that Deanne "had impaired gait and needed to use a rolling walker and wheelchair." The physical therapist approved Deanne for discharge and noted that Deanne should continue with physical therapy.

The same day, Dr. Patel ordered that Deanne be discharged from the hospital. Dr. Patel also ordered that Deanne "ambulate with assistance or assistive device." In the process of being discharged, Deanne fell while moving from her bed to a wheelchair. A hospital transporter present in the room when Deanne fell stated that he was unable to assist Deanne as she fell to the floor.

In his first expert report, Dr. Gavi opined as follows with respect to the

standard of care and alleged breach:

**Medical Opinions regarding Standard of Care**

[Deanne] had multiple risk factors that suggested that she was at high risk for falls. The admitting internal medicine physician had an obligation to identify [Deanne] as a high fall risk and to communicate appropriate orders including fall risk precautions.

             \*              \*              \*

The hospital staff had an obligation to develop protocols and appropriately implement those protocols, to ensure that patients who are at high risk for falls, and have appropriate interventions to prevent falls. The hospital staff had an obligation that appropriate measures were in place to prevent high risk for [sic] patients from falling. This would include personal assistance from trained personnel to assist the patient in transferring from bed to wheelchair that includes personnel remaining at the patient's side at all times until she is safely situated in a chair or wheelchair.

**Breaches in the Standard of Care**

The admitting hospitalist, internal medicine physician Dr. [] Patel breached the standard of care by failing to properly identify [Deanne] as a high risk for falls. Although the emergency department physician recommended fall precautions, Dr. Patel breached the standard of care by placing admission orders which included "activity as tolerated" and "up with assistance." This failed to take into account the patient's particular susceptibility to falls and direct staff to provide her greater assistance with transfers, and it was a breach of the standard of care.

Dr. Gavi's supplemental report expands on the standard of care and breach as follows:

**Medical Opinions regarding Standard of Care**

In my initial report, I noted that [Deanne] had multiple risk factors that suggested that she was at high risk for falls. The admitting internal medicine physician, Dr. Patel, had an obligation to identify [Deanne] as a high fall risk and to communicate appropriate orders including fall risk precautions. Those orders must be specific, and the

7

physician must take care to avoid issuing contradictory guidance to nursing and hospital staff. Furthermore, the obligation is that of the admitting physician. In my initial report, I observed that the emergency department provider, Dr. Boyareddigari, recommended fall precautions for this patient. However, a recommendation does not amount to an order, and another physician's recommendation could not discharge Dr. Patel's duty. Further, a hospital's [sic] simply placing some fall precaution measures in place does not relieve the admitting physician of his duty to make the appropriate orders to ensure patient safety. Dr. Patel needed to provide specific orders regarding transfers, namely, that they should be properly assisted by appropriately trained personnel.

**Breaches in the Standard of Care**

As I noted in my initial report, although the emergency department physician recommended fall precautions, Dr. Patel breached the standard of care by placing admission orders which included "activity as tolerated" and "up with assistance." This effectively contradicted and minimized any notion that the patient was a serious fall risk and failed to take into account the patient's particular susceptibility to falls, while directing staff to provide her greater assistance with transfers. Further, Dr. Patel did not specify that the patient should receive assistance with transfers from appropriately trained personnel, and the records and her unfortunate fall show that she did not receive such assistance. The hospital, operating without direction from Dr. Patel, put no such precautions into place.

Reading these reports together, we conclude the trial court did not abuse its discretion in concluding that they provide a "fair summary" of the applicable standards of care and the alleged breach. *See Naderi*, 572 S.W.3d at 778.

After reciting the various health issues that Deanne presented with when she arrived at the hospital on June 5, 2018, Dr. Gavi opined that Dr. Patel "had an obligation to identify [Deanne] as a high fall risk and to communicate appropriate orders including fall risk precautions." Recognizing that Dr. Boyareddigari recommended fall precautions for Deanne, Dr. Gavi asserted that Dr. Patel was

8

obligated "to avoid issuing contradictory guidance". Continuing on, Dr. Gavi stated that Dr. Patel also was obligated to "provide specific orders regarding transfers, namely, that they should be properly assisted by appropriately trained personnel." These statements adequately describe the applicable standards of care in these circumstances, to whom those standards applied, and the steps that needed to be taken to ensure their performance.

Dr. Gavi opined that these standards of care were breached when Dr. Patel (1) failed to identify Deanne as having a high risk for falls, (2) placed admission orders that included "activity as tolerated" and "up with assistance", and (3) failed to specify that Deanne should receive assistance with transfers from appropriately trained personnel. These allegations provide a fair summary of the conduct complained of and what Dr. Patel should have done differently when evaluating a patient with multiple risk factors suggesting a high risk for falls.

On appeal, Dr. Patel complains that Dr. Gavi's reports are insufficiently specific with respect to the complained-of conduct. While Dr. Gavi's reports could have been more specific as to exactly what "fall precautions" should have been in place or what "greater assistance with transfers" required, we cannot say the trial court's conclusion that they were sufficient constitutes an abuse of discretion. *Compare Sanjar v. Turner*, 252 S.W.3d 460, 468 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (that expert report "could have been more specific" did not render trial court's conclusion that it was adequate an abuse of discretion) *with CHCA Mainland, L.P. v. Dickie*, No. 14-07-00831-CV, 2008 WL 3931870, at \*8 (Tex. App.—Houston [14th Dist.] Aug. 21, 2008, no pet.) (mem. op.) (expert report insufficiently specific as to breach because it stated only that the defendant "did not meet these standards of care and was negligent"). Viewing Dr. Gavi's reports in their entirety, the standard of care sufficiently describes the actions Dr.

9

Patel should have taken when presented with a patient like Deanne, who was a high risk for falls.

Dr. Gavi's reports provided Dr. Patel with notice of the conduct complained of and what she should have done differently in these circumstances. Therefore, the trial court did not abuse its discretion in concluding that the reports provided a "fair summary" of the applicable standards of care and the alleged breach of those standards. *See Abshire*, 563 S.W.3d at 226; *Naderi*, 572 S.W.3d at 778-79.

## B. Causation

To provide a fair summary of causation, an expert must explain "how and why" the physician's alleged breach caused the injuries claimed. *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 459-60 (Tex. 2017). A conclusory statement of causation is inadequate; rather, the expert must explain the basis of his statements and link conclusions to specific facts. *E.D.*, 2022 WL 1434658, at *3. Satisfying the "how and why" standard does not require that the expert prove the entire case or account for every known fact — the report is sufficient if it makes "a good-faith effort to explain, factually, how proximate cause is going to be proven." *Id*.

Proximate cause has two components: (1) foreseeability, and (2) cause-in-fact. *Humble Surgical Hosp., LLC v. Davis*, 542 S.W.3d 12, 23 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). For a negligent act or omission to have been a cause-in-fact of the alleged harm, the act or omission must have been a substantial factor in bringing about the harm. *Id*.

Dr. Gavi's first report stated as follows with respect to the causal relationship at issue here:

> On June 7, 2018, [Deanne] suffered a traumatic fall which resulted in the pelvis and hip fracture. Unfortunately, she continued to have

severe pain, disability, and continued physical decline. She required continued opiate medications and was mostly in bed. She gradually declined and on June 24, 2018 suffered sequelae of pelvic/hip fracture and a consequent cardiopulmonary arrest. The cause of the cardiopulmonary arrest on June 24, 2018, was a consequence of severe deconditioning that followed the pelvic and hip fracture suffered on June 6, 2018. Prolonged required bed rest and inability to tolerate activity can and will lead to deconditioning in the form of weakening of the pulmonary and cardiovascular systems, and this deconditioning makes a patient more susceptible to cardiopulmonary disease and arrest. It is reasonably probable that the deconditioning [Deanne] suffered following her fractures substantially contributed to her subsequent cardiac arrest.

The breaches in the standard of care by Dr. [] Patel w[ere] a substantial contributing factor to [Deanne's] injury and subsequent death.

Dr. Gavi's supplemental report elaborated on his causation opinion as follows:

Had Dr. Patel provided appropriate instruction regarding transfers and avoided contradicting any such order, it is reasonably probable that reasonable hospital staff would have followed those instructions, ensured that [Deanne] received appropriate assistance during transfers from trained personnel, and that this would have prevented her fall from occurring in the first place. Without this fall, obviously, she would not have suffered the pelvic and hip fracture that she did. This injury led to a long period of bed rest and administration of opiate medications. This, in turn, led to severe deconditioning. Prolonged required bed rest and inability to tolerate activity can and will lead to deconditioning in the form of weakening of the pulmonary and cardiovascular systems, and this deconditioning makes a patient more susceptible to cardiopulmonary disease and arrest. It is reasonably probable that the deconditioning [Deanne] suffered following her fractures substantially contributed to her subsequent cardiac arrest.

Dr. Gavi's reports provide a fair summary of causation in this case. *See Harvey v. Kindred Healthcare Operating, Inc.*, 578 S.W.3d 638, 653 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("To determine whether the expert's causation conclusions are detailed enough . . . , we read the expert's conclusions on causation

in the context of the entire report, not piecemeal or in a vacuum."). Dr. Gavi states that, if Dr. Patel had "provided appropriate instruction regarding transfers," it is reasonably probable that the attending hospital staff would have followed those instructions. Read in conjunction with the remainder of the reports, this reference to "appropriate instructions" refers to the articulated standards of care, *i.e.*, Dr. Patel's obligation to order fall precautions and that Deanne's transfers be appropriately assisted in light of her risk of falling.

Continuing on, Dr. Gavi opines that, if Deanne had received appropriate assistance during her transfer, her fall would have been prevented. Dr. Gavi then delineates the consequences of Deanne's fall, beginning with a pelvic and hip fracture that necessitated bed rest and opiate medications. Dr. Gavi opines that this course of care led to "severe deconditioning," which makes a patient "more susceptible to cardiopulmonary disease and arrest." Dr. Gavi concludes it is "reasonably probable" that the deconditioning Deanne suffered as a result of her fall "substantially contributed to her subsequent cardiac arrest."

In sum, Dr. Gavi's reports adequately describe "how and why" Dr. Patel's alleged breaches of the applicable standards of care caused a chain of events that resulted in Deanne's injuries and death. *See, e.g.*, *Patel v. Williams ex rel. Estate of Mitchell*, 237 S.W.3d 901, 906 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (expert opinion on causation adequate because expert opined that defendant-physician's "decision to treat Mitchell's dementia with Risperdal began a chain of events ultimately culminating in Mitchell's death"). The trial court did not abuse its discretion in concluding that the reports provided a "fair summary" of the causal relationship at issue here. *See E.D.*, 2022 WL 1434658, at *3; *Abshire*, 563 S.W.3d at 226; *Naderi*, 572 S.W.3d at 778-79.

We overrule Dr. Patel's issues.

## CONCLUSION

We affirm the trial court's March 15, 2021 order denying Dr. Patel's motion to dismiss.


/s/    Meagan Hassan
Justice


Panel consists of Justices Jewell, Zimmerer, and Hassan.

13